UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AUSTIN'S NATURAL FROZEN POPS, INC. d/b/a GOODPOP, | § § § | |
| Plaintiff, | § § | CASE NO. 1:24-CV-716-RP |
| vs. | § § | JURY TRIAL DEMANDED |
| JONNY POPS, LLC | § § | |
| Defendant. | § § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL CONSUMER SURVEY AND RELATED MATERIALS**

| | | |
|---|---|---|
| I. | RELEVANT BACKROUND .................................................................................... | 2 |
| | A.  GoodPop's Survey ........................................................................................ | 2 |
| | B.  JonnyPops Improperly, Prematurely Demanded the Survey ...................... | 2 |
| | C.  JonnyPops' RFP No. 26 ............................................................................... | 3 |
| | D.  JonnyPops' RFP Nos. 27 and 28 ................................................................. | 4 |
| | E.  GoodPop's Initial Disclosures, Interrogatory Responses, and Privilege Log ............ | 5 |
| II. | ARGUMENT & AUTHORITIES ........................................................................... | 6 |
| | F.  GoodPop Properly Asserted Privilege Over Certain RFP 26 Documents ................... | 6 |
| | G.  JonnyPop Failed to Meet and Confer Regarding Section B of Its Motion ................ | 10 |
| III. | CONCLUSION ....................................................................................................... | 10 |

Eager to distract from its own dilatory discovery conduct detailed in Plaintiff Austin's Natural Frozen Pops, Inc. d/b/a GoodPop's ("GoodPop") Motion to Compel, Dkt. 39, Defendant Jonny Pops, LLC ("JonnyPops") has prematurely filed a competing Motion raising sundry issues that are either not really in dispute, not ripe, or both. GoodPop has produced nonprivileged documents responsive to Request for Production ("RFP") 26; it has agreed to log privileged documents responsive to RFP 26 by a date certain; it has supplemented its responses to Interrogatories 1 and 2; and it requested but never received authority from JonnyPops regarding the disclosures demanded.

Looking past JonnyPops' rhetoric to the facts, GoodPop has been reasonable and acted in good faith throughout discovery by:

- reordering its discovery efforts to prioritize specific RFPs per JonnyPops' demands;
- diligently and timely producing non-privileged discovery;
- diligently and timely providing, and then supplementing, its written discovery responses;
- and reasonably conferring and corresponding with JonnyPops regarding the positions it took, expected discovery timelines, and the basis for its actions.

In contrast, as set forth below and in GoodPop's Motion, Dkt. 39, JonnyPops has done nothing remotely comparable.

If JonnyPops had met and conferred about its Motion, it likely could have limited the dispute to a single, narrow point of law—whether communications between GoodPop and its counsel discussing a survey about JonnyPops' products, prepared in anticipation of litigation, are protected by privilege. That sole point of actual dispute is readily settled in GoodPop's favor: GoodPop already produced the Survey and its results, and the underlying materials that JonnyPops still demands are protected by the work product and, in some instances, attorney-client privileges. Citing the Survey in its Complaint did not put those underlying materials at issue, so GoodPop did not waive the privileges. None of JonnyPops' cases suggest otherwise.

## I. RELEVANT BACKGROUND

### A. GoodPop's Survey

GoodPop does not dispute that it conducted the consumer survey cited in its Complaint (the "Survey"). GoodPop conducted the Survey in preparation for this litigation, at the direction of counsel, in support of its allegations regarding JonnyPops' misconduct and to comply with counsel's obligations under Federal Rule of Civil Procedure 11(b).

GoodPop conducted the Survey "via Upsiide," GoodPop's "third-party vendor for surveys" on May 3, 2024. Dkt. 41, Ex. Q at 7 (Pl.'s Supp. Resp. to Rog 1 and 2). Upsiide is a software-as-a-service platform that allows users to "test and optimize . . . products" and "answer key business questions."[1] GoodPop does not design surveys with substantive input from Upsiide personnel; rather, GoodPop uses Upsiide's software and consumer survey panels to conduct its own surveys, *i.e.*, GoodPop directly polls consumers via Upsiide. JonnyPops surmises that there must be communications between GoodPop and Upsiide *developing* the Survey that are being withheld, but that is simply not so. Nor are identities of Upsiide individuals who *conducted* the Survey being withheld: there are none.

### B. JonnyPops Improperly, Prematurely Demanded the Survey

JonnyPops asserts that GoodPop should have produced the Survey in response to its request in its July 2024 letter, more than five months before the beginning of the discovery period under the Federal Rules. But Rule 26(d) prohibited JonnyPops' premature, improper demands for the production of documents—and GoodPop had no duty to produce discovery at that time. *See* Fed. R. Civ. P. 26(d) ("[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) . . ."). JonnyPops' continued insistence that it was entitled to

---

[1] https://diginsights.com/upsiide/.

receive the Survey prior to the discovery period and prior to its service of an RFP is simply wrong.

### C. JonnyPops' RFP No. 26

JonnyPops served RFP 26 on January 16, 2025, requesting:

> All Documents relating to any consumer survey, market study, or competitive analysis concerning the Statements at Issue, including any testing or research relating to consumers' interpretation of or responses to the Statements at Issue.

**GoodPop has already produced the Survey and its results in response to RFP 26.**[2] GoodPop directed JonnyPops to those documents. *See* Dkt. 41, Ex. Q at 7. ▮▮▮▮▮. Ex. 1 ▮▮▮▮▮[3] Row 1 includes questions and Rows 2-301 display responses from the 300 respondents. *See id.* The Complaint describes the Survey respondents, ▮▮▮▮▮. Ex. 1 at ▮▮▮. JonnyPops' confusion about the responses can be resolved in a deposition; it *does not* mean that GoodPop has improperly withheld documents, nor does it reveal nefarious intent by GoodPop.

In response to JonnyPops' demands for survey-related discovery, GoodPop accelerated its review and production of survey-related documents. Ex. 6 (Buratti 5/2 Email) at 1. On May 12, 2025, GoodPop produced the Survey as it was presented to respondents, *see* Dkt. 41, Ex. P (GOODPOP00001702), Ex. Q at 7. GoodPop has also produced Upsiide background documents: details on creating consumer survey audiences, Ex. 2 (GOODPOP00001717); descriptions of how it ensures data quality, Ex. 3 (GOODPOP00001729); the explanation of how users can populate panels, Ex. 4 (GOODPOP00001731); and the standard qualifications for the consumer panel

---

[2] It has also produced documents related to other consumer surveys conducted by GoodPop. GoodPop has produced 121 documents that hit on the term "survey."

[3] Due to the file's size, GoodPop is providing excerpts of ▮▮▮▮▮, the Excel spreadsheet of Survey questions and responses. The excerpts demonstrate that the Survey questions and responses are visible when the spreadsheet's columns are expanded. At the Court's request GoodPop will deliver the entire file for inspection.

network associated with Upsiide, Ex. 5 (Excerpts of GOODPOP00001733).[4]

### D.   JonnyPops' RFP Nos. 27 and 28

Although JonnyPops sweeps RFPs Nos. 27 and 28 up in its arguments for "  Dkt. 41, Ex. C  GoodPop objected to each of these RFPs based on their apparent lack of relevance and proportionality and declined to produce documents at that time, instead offering to meet and confer. JonnyPops characterizes GoodPop's objections as boilerplate—not so: on their face, these RFPs do not have any tendency to make a fact at issue in this case more or less probable.

JonnyPops never met and conferred regarding RFPs 27 and 28, despite the Court's rule requiring conferences. *See* LR CV-7(g). It has not adequately explained the relevance of either RFP at the parties' three meet-and-confers or in correspondence. The reference to RFP 27[5] in JonnyPops' correspondence broadly refers to "documents relating to consumer surveys and market studies," rather than engagement letters or contracts, and offers only a brief statement that the documents are "directly relevant to GoodPop's claims of customer confusion" and "causation." *See* Dkt. 42-10 (Def.'s 3/17 Letter) at 3. It is difficult to imagine how any engagement letter or contract with, for example, Upsiide, would bear on those issues. Regardless, JonnyPops did not have that discussion with GoodPop before filing its Motion. GoodPop can find no instance of JonnyPops raising RFP 28.

---

[4] Upsiide uses Lucid (Cint), a consumer panel network, to source respondents for surveys created on the platform. *See* https://support.upsiide.com/en/articles/9524560-what-is-an-audience-marketplace-and-how-do-you-get-respondents. Lucid (Cint) allows Upsiide users to set and screen for certain standard qualifications for respondents, such as education, hobbies, and interests. *See* https://support.lucidhq.com/s/article/Standard-Qualifications. Lucid (Cint)'s procedure for setting standard qualifications is publicly available through the company's website.

[5] It appears that the reference to RFP 27 in the letter may be a typo, where counsel meant to refer to RFP 26.

4

### E. GoodPop's Initial Disclosures, Interrogatory Responses, and Privilege Log

JonnyPops also demanded that GoodPop update its Initial Disclosures ("IDs") to "identify all persons involved in designing and/or conducting the survey" and serve a privilege log for survey-related documents—though it omits that it unreasonably demanded that GoodPop do so *within just four business days*. *See* Dkts. 42 at 10; 42-12 (Ex. L, Def.'s 4/18 Email) at 1. JonnyPop also completely omits GoodPop's May 2 response to its unreasonable demand:

> We do not see a requirement in the rules that we update IDs to provide the level of granularity that you are requesting, nor are we aware of any requirement that we provide a privilege log on demand. We will provide a complete privilege log closer to the end of the fact discovery period, on a date that the parties agree up on for mutual exchange. We propose August 29, please let me know if you agree to that deadline . . .
>
> We will supplement our response to Interrogatory 2, but at this time we cannot commit to doing so by the deadline that you are trying to impose. . . .
>
> Please feel free to point us to any authority that you contend requires that we update our IDs to provide the level of detail you're requesting and a privilege log on demand. If you would like to meet and confer regarding the IDs and privilege log, which the parties have not yet discussed on a call, please let me know your availability for the call.

Ex. 6 (Buratti 5/2 Email) at 1. JonnyPops' Motion fails to disclose that GoodPop requested authority in support of JonnyPop's unusual demand for highly specific IDs, but JonnyPops did not respond nor confer on this issue. Furthermore, GoodPop committed to providing the privilege log, although not on JonnyPops' unilateral timeline; again, JonnyPops did not confer on this issue. Instead, JonnyPops just filed its Motion. With respect to Interrogatory 2, GoodPop reasonably agreed to supplement its response by a date certain—something that JonnyPops had staunchly refused to do, *see* Ex. 7 (Buratti and Friedman 5/18 and 5/20 Emails) at 2—and then did so. ████████████████████████████████████████████████████████████████████████ ████████████████████████, *see* Ex. 8 ████████████████████████████; Ex. 9 ████████████████████████████ JonnyPops apparently believed that the supplemental

response still lacked sufficient detail. But it did not raise the issue with GoodPop or confer. Had JonnyPops raised the issue prior to filing the Motion, GoodPop would have agreed to further supplement its response to Interrogatory 2; it will now do so, thus rendering the issue moot.

## II.   ARGUMENT & AUTHORITIES

JonnyPops' Motion thus presents a single, narrow, simple issue: Because GoodPop and its counsel designed the Survey in anticipation of this litigation, the correspondence between counsel and GoodPop surrounding the Survey and unused drafts thereof are privileged; because they have not been relied on, they remain privileged.[6] None of the Motion's other points are ripe (or valid).

### F.   GoodPop Properly Asserted Privilege Over Certain RFP 26 Documents.

JonnyPops is careful to make it seem like its Motion is about the Survey and its results. But that is not at all the reality. GoodPop produced the Survey—it's even attached to JonnyPop's Motion. Dkt. 41, Ex. P. And GoodPop produced its results, although JonnyPops omitted them from its exhibits. *See* Dkt. 42 at 5 n.1. Since it already has the primary-source documents at issue, what is JonnyPops still demanding? *Secondary* documents, specifically "communications [and] analysis relating to the survey's design, administration, or results." *Id.* at 1, 6.

As JonnyPops knows, GoodPop conducted the Survey "[i]n association with this Lawsuit and under the direction of counsel." Dkt. 42 at 6 (quoting Dkt. 41, Ex. Q at 7).[7] So documents and communications about the Survey's development, administration, or results, such as drafts, and analyses of the results, are squarely covered by work product privilege. *See* Fed. R. Civ. P. 26(b)(3)(A) (protecting materials "that are prepared in anticipation of litigation or for trial by or

---

[6] Should it assist the Court, GoodPop will log those withheld documents and/or submit the documents to the Court for *in camera* review.

[7] JonnyPops' bald claim that "GoodPop has never offered anything" demonstrating the applicability of privilege, Dkt. 42 at 7, is proven false by the words of its own Motion.

for another party or its representative"); *e.g.*, *Friends of Hope Valley v. Frederick Co.*, 268 F.R.D. 643, 648 (E.D. Cal. 2010) ("To the extent that the questionnaires contain plaintiff's board members' or counsel's mental impressions, conclusions, opinions, or legal theories concerning the litigation, that material is protected by the work product doctrine[.]"). Communications about the Survey between GoodPop and its counsel are further protected by attorney-client privilege. *See Adams v. Mem'l Hermann*, 973 F.3d 343, 349 (5th Cir. 2020) (noting that "the work-product doctrine is distinct from" the protection of communications under attorney-client privilege). It is JonnyPops' burden to overcome GoodPop's well-founded assertions of privilege. *Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 487 (W.D. Tex. 2020). The grounds its Motion offers fail.[8]

JonnyPops' central, incorrect assertion is that GoodPop *universally* waived privilege as to all "survey-related materials" by citing the Survey in its Complaint. Dkt. 42, at 8. It is true that a party "waives privilege over documents that it places 'at issue' in litigation," and that a document is "at issue" once the party relies on the document "'to prove its claims in the case.'" *Id.* (quoting *Doe 1*, 335 F.R.D. at 488). GoodPop agrees that, by citing it in the Complaint and in opposition to JonnyPop's motion to dismiss, it placed the Survey at issue. That is exactly why GoodPop *has already produced* the Survey and its results—the documents on which it has thus far relied "to prove its claims in the case." *Doe 1*, 335 F.R.D. at 488.

But JonnyPops' demand for all "survey-related documents and documents prepared by non-legal experts," Dkt. 42 at 9, goes far beyond what GoodPop's Complaint put at issue.[9] As this Court has held, the "scope of an 'at issue' waiver" depends "on the facts of the case, and what has

---

[8] JonnyPops first suggests that GoodPop's use of Upsiide, a third-party SaaS platform, vitiates privilege because work product doctrine is purportedly limited to "a *lawyer's* research" alone. Mot. 8. Nonsense. Materials prepared by the client in anticipation of litigation are equally covered. *See, e.g.*, *Homeland Ins. Co. of N.Y. v. Clinical Pathology Labs., Inc.*, 643 F.Supp.3d 675, 683-84 (W.D. Tex. 2022) (denying motion to compel production of client-generated emails to advisor assisting with litigation preparation).

[9] GoodPop has not designated Upsiide as an expert witness.

7

been put 'at issue.'" *Doe 1*, 335 F.R.D. at 497. JonnyPops asserts that such waiver broadly extends to any "material on that subject matter necessary to litigate the issue fairly," Dkt. 42 at 9 (quoting *Doe 1*, 335 F.R.D. at 499), but under the Federal Rules "subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." Fed. R. Evid. 502 cmte. note (2007). GoodPop's production of the entirety of the Survey and its full set of results is neither selective nor misleading, and nothing in how it has used the Survey makes it unfair to exclude the privileged documents and communications regarding the Survey's development. And any supposed unfairness is mitigated by JonnyPops' ability to conduct its own market research.

      The materials GoodPop is withholding—such as emails between GoodPop and counsel regarding the survey design, and draft versions of the Survey—fall squarely within the privileges. *See, e.g.*, *Friends of Hope Valley*, 268 F.R.D. at 648 ("[C]ounsel's instructions to the questioning board members contained in the questionnaires are not subject to disclosure."). And, in contrast to the Survey itself, GoodPop never relied on such communications, drafts, or other secondary documents to prove its claims. To waive privilege over such materials, however, a party must "rel[y] *specifically* on advice of counsel to support a claim or defense and intend[] to prove that claim or defense using privileged communications." *Sw. Marine & Gen. Ins. Co. v. Nat'l Credit Union Admin. Bd.*, No. AU-17-CA-00367-SS, 2018 WL 6313294, at *2 (W.D. Tex. Nov. 30, 2018) (emphasis added). Because GoodPop's claim relies only on the Survey and its results, as opposed to the advice of counsel that informed its development, and because it does not intend to prove its claim using the privileged advice, communications, and work product, GoodPop has not waived privilege as to the broad class of "survey-related materials" that JonnyPops demands. *Id.*

      The Motion is full of citations that JonnyPops contends point in the other direction. But all

are distinguishable. First, unlike *Doe 1* and similar cases, GoodPop has not, will not, and need not rely on privileged materials to prove its case. Whereas Baylor's reliance-on-counsel defense in *Doe 1* necessarily implicated "the facts and advice it … received" from counsel, or where an employer's reliance on an investigation to show the reasonableness of its response to discrimination allegations makes "the adequacy of the employer's investigation … critical to the issue of liability," 335 F.R.D. at 498, whether JonnyPops mislead consumers does not turn on whether GoodPop adequately investigated such deception. Second, GoodPop did not (and does not intend to) designate Upsiide as an expert, so JonnyPops' cases regarding expert-considered materials are wholly inapposite. Third, though parties conduct consumer surveys with the involvement of counsel in many Lanham Act cases, not one of JonnyPops' cases involves waiver of privilege as to materials underlying a consumer survey conducted in such a case. *Cf., e.g.*, *Delta Air Lines, Inc. v. Marriott Int'l, Inc.*, No. 1:20-CV-01125-ELR-JCF, 2021 WL 12121916, at *6-9 (N.D. Ga. June 25, 2021) (finding privilege over consumer confusion survey not waived).

The only Lanham Act survey case JonnyPops cites, *Milwaukee Concrete Studios, Ltd. v. Greeley Ornamental Concrete Products, Inc.*, 140 F.R.D. 373 (E.D. Wisc. 1991), in fact supports GoodPop's position. There, because the surveyor had "submitted *partial* results of the 'survey'" in support of an injunction, the court required that "it must disclose *all* of the results" and had "waived any sort of protection of the remainder of the materials." *Id.* at 376-77. But even then, the court held that the surveyor would still "be permitted to redact any portions of these materials that will disclose the mental impressions, conclusions, opinions or legal theories of its attorneys or other representatives." *Id.* That outcome directly supports GoodPop here. The Survey and its results have been relied upon, waiving such protection. GoodPop accordingly produced them. But the underlying secondary documents, which GoodPop did not rely on and which contain protected

9

material, like the materials redactable in *Milwaukee Concrete*, retain the privilege.

### G.  JonnyPop Failed to Meet and Confer Regarding Section B of Its Motion

JonnyPops also contends that GoodPop has failed to supplement its IDs and interrogatory responses to "identif[y] the specific individuals who designed and administered the survey," and has improperly refused to produce a privilege log regarding the survey documents. Dkt. 42, at 10. As described above, JonnyPops' assertions fail, for several reasons.

First, no legal authority requires GoodPop to amend its IDs as JonnyPops requests. Ex. 6 at 1-2. To date, JonnyPops has not answered counsel's request to provide authority supporting its claim that Rule 26(a)(1)(A)(i) requires IDs with the degree of granularity JonnyPops demands.[10]

Second, JonnyPops failed to meet and confer on these issues before seeking the Court's intervention. *See* Fed. R. Civ. P. 37(a)(1); LR CV-7(g). No certificate of conference accompanies the Motion, *see* Dkt. 42 at 13, and for good reason—GoodPop offered to meet and confer with respect to these issues, Ex. 7 at 2, but JonnyPop never responded, filing the instant Motion instead.

Third, JonnyPops lacks authority for its demand that GoodPop serve a privilege log well in advance of the close of fact discovery. The only "on demand" or temporal requirement for a privilege log is the close of fact discovery deadline, and the provision addressing claw back of inadvertently produced privileged material in the Confidentiality and Protective Order of Feb. 13, 2025. Dkt. 28 ¶ 18. That provision does not govern this Motion.

### III.  CONCLUSION

For these reasons, GoodPop respectfully requests that the Court deny JonnyPop's Motion to Compel Consumer Survey and Related Materials.

---

[10] As of filing its Motion, even ██████████ ██████████ *See* Ex. 8 at 2. ██████████ Ex. 10 ██████████ The level of specificity of JonnyPops' supplemented IDs pales in comparison to what it has requested of GoodPop.

| | |
|---|---|
| Dated: June 3, 2025 | Respectfully submitted, |

<div style="margin-left:50%">

*/s/ Leah Bhimani Buratti*
Leah Bhimani Buratti
State Bar No. 24064897
leah@bccaustin.com

**BOTKIN CHIARELLO CALAF PLLC**
Leah Bhimani Buratti, TX Bar No. 24064897
leah@bccaustin.com
1209 Nueces Street
Austin, TX 78701
Telephone: (512) 615-2341

**HUESTON HENNIGAN LLP**
John C. Hueston, CA State Bar No. 164921
jhueston@hueston.com
(*pro hac vice*)
Sourabh Mishra, CA State Bar No. 305185
smishra@hueston.com
(*pro hac vice*)
Christine M. Woodin, TX Bar No. 24100051
cwoodin@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340

*Attorneys for Plaintiff*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this the 3rd day of June 2025, I served a true and correct copy of this document upon counsel of record via email.

<div style="text-align: right;">

*/s/ Leah Bhimani Buratti*
Leah Bhimani Buratti

</div>