UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| AUSTIN'S NATURAL FROZEN POPS, INC. d/b/a GOODPOP, <br><br> Plaintiff, <br><br> v. <br><br> JONNY POPS, LLC <br><br> Defendant. | No. 1:24-cv-716-RP |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS
DEFENDANT'S AMENDED COUNTERCLAIMS**

The Federal Rules do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). JonnyPops demands reciprocal discovery from GoodPop without identifying a single plausible false advertising claim. To survive GoodPop's Motion to Dismiss under Rule 12(b)(6), JonnyPops must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). JonnyPops fails to reach this bar. Instead, JonnyPop relies on "conclusory allegations, unwarranted factual inferences, [and] legal conclusions," none of which can save a pleading from dismissal. *Norsworthy v. Houston Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023). Accordingly, GoodPop respectfully seeks dismissal of JonnyPops' Amended Counterclaims (Dkt. 37) ("Counterclaims").

### A. JonnyPops' Allegations Regarding Discovery Disputes and GoodPop's Causes of Action Have No Bearing on this Motion

JonnyPops' Response (Dkt. 59) ("Response") offers no substantive rebuttal to GoodPop's Motion to Dismiss JonnyPops' Amended Counterclaims (Dkt. 44) ("Motion"). Its first six pages merely rehash the parties' discovery disputes—which are already separately briefed via the parties' motions to compel. Because "a plaintiff must adequately plead a claim **before getting merits discovery**," the parties' discovery disputes are irrelevant to the instant Motion. *Doe v. Harrell*, 841 F. App'x 663, 671 (5th Cir. 2021) (emphasis added); *see also Johnson v. BOKF Nat'l Ass'n*, 15 F.4th 356, 365 (5th Cir. 2021) (a plaintiff that does not "allege sufficient facts in [its] complaint to state a plausible claim for relief . . . is not entitled to discovery'" (citations omitted)). This Court must decide a Rule 12(b)(6) motion on the pleadings, therefore JonnyPops' arguments regarding GoodPop's alleged discovery intransigence (with which GoodPop disagrees) are immaterial.

Nor can JonnyPops defeat the Motion by accusing GoodPop of "hypocrisy" or arguing a false equivalence between the parties' pleadings. JonnyPops' pleading must be assessed on its

1

merits, and JonnyPops' tit-for-tat Counterclaims do not (and cannot) plead factual allegations concerning GoodPop's advertising and products sufficient to meet Rule 12(b)(6)'s requirements.

### B. In its Second Attempt, JonnyPops Still Fails to Plead Any Plausible Facts in Support of its Unfounded Counterclaims.

Although it had more than 10 months to investigate potential counterclaims and has amended its counterclaims, JonnyPops still does meet Rule 12(b)(6)'s requirement to plausibly allege *any* of its purported categories of false advertising.[1] JonnyPops' allegations fail primarily due to their reliance on unsupported "conclusory allegations [and] unwarranted factual inferences." *Norsworthy*, 70 F.4th at 336; *see R2 Investments LDC v. Phillips,* 401 F.3d 638, 642 (5th Cir. 2005) ("we will not accept 'conclusory allegations, unwarranted deductions, or legal conclusions'" (citations omitted)). Neither JonnyPops' Counterclaims nor its Response identify any plausible allegation that GoodPop made a false statement, or that any customer was deceived.[2]

#### *1. JonnyPops' Counterclaims wrongly presume that all "cane sugar" is "refined"*

In attempting to plead that GoodPop misleadingly advertises that its products do not contain "refined sugars," JonnyPops relies entirely on the false premise that all "cane sugar" is necessarily "refined sugar." Resp. at 9; Comp. ¶ 37(a). JonnyPops makes this claim—and asks this Court to greenlight the allegation—based on a false inference conjured from a non-binding, 30-year old FDA guidance document addressing "raw"—*not "unrefined"*—sugar. Resp. at 9; Comp. ¶ 37(a) & n.9 (citing a 1995 FDA "Compliance Policy Guide" to argue that "cane sugar . . . is always refined to some extent"). JonnyPops argues that the FDA purportedly prohibits the sale of

---

[1] JonnyPops concedes that its three causes of action all rely on the same allegations and thus rise and fall together. *See* Resp. at 8.

[2] Response Part III-B-1 misses the point. Resp. at 8. GoodPop does not say that the Counterclaims "should be dismissed" just for lack of survey data. *See* Mot. at 2. Rather, GoodPop asserts that JonnyPops failed to "plead deception of a substantial segment of consumers and materiality" absent *any* survey data, applicable consumer comments, or other well-pleaded factual allegations.

"unrefined sugar for human consumption," therefore imputes that GoodPop's cane sugar *must* be "refined." Resp. at 9; But JonnyPops' foundational premise is simply wrong: **FDA regulation 21 C.F.R. § 172.810(b) expressly approves "the production of *unrefined cane sugar*," establishing that, in fact, "cane sugar" regulated by the FDA *can* be "unrefined."** And cane sugar is often unrefined: a stroll down the grocery aisle belies JonnyPops' premise, as numerous products feature "unrefined cane sugar," [3] including the following examples:



Significantly, the counterclaims plead nothing about the nature of the actual "cane sugar" in GoodPop's products. Instead, JonnyPops asserts, as the sole basis for (wrongly) alleging that GoodPop's products contain refined sugar, the false premise that cane sugar cannot be unrefined. *See* Compl. ¶ 37(a); Resp. at 9-11. Because FDA regulations definitively debunk JonnyPops' premise, this counterclaim unravels: JonnyPops has failed to plausibly allege that GoodPop products contain anything other than **unrefined** cane sugar. *See Elseroad v. Bos. Foundry, Inc.*, 2024 WL 3404805, at *6 (W.D. Tex. July 10, 2024) (Pitman, J.) (granting 12(b)(6) dismissal of false advertising claims because, in order to plead that the defendant's "'free from . . .' statement

---

[3] "Determining whether a claim is plausible 'requires the reviewing court to draw on its judicial experience and common sense.'" *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022) (quoting *Ashcroft*, 556 U.S. at 679). On a 12(b)(6) motion, a court "'must consider . . . matters of which a court may take judicial notice.'" *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 589 (5th Cir. 2020). Courts "may judicially notice a fact that is not subject to reasonable dispute," such as the existence of unrefined cane sugar, "because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined . . ." Fed. R. Evid. 201(b); *see e.g., Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 817 (5th Cir. 2007) (judicially noticing reduced housing caused by Katrina).

is misleading, Plaintiffs must plausibly allege that [the defendant's product] has [that substance]"). JonnyPops has thus failed to plead both that GoodPop's made false representations about the lack of "refined sugars," and consumer deception—two essential elements of its "refined sugars" claim.

### 2. JonnyPops falsely claims the FDA considers "fruit-juice concentrate" an "additive," not juice, and identifies no false statement or consumer confusion

JonnyPops' attack on GoodPop's statement that it uses "real, whole fruits, juices and purees" in its products also fails to state a plausible false advertising claim. *First*, JonnyPops' allegation that the fruit-juice concentrates in GoodPop products are "additives, rather than whole fruits, juices, or purees" relies on another false premise belied by the Code of Federal Regulations. Contrary to JonnyPops' conclusory pronouncement that fruit-juice concentrates are "additives," FDA regulations establish that concentrates, like those GoodPop uses, *are a type of juice*: "Juice means the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, ***or any concentrates of such liquid or puree***." 21 C.F.R. § 120.1 (emphasis added). Thus, GoodPop's advertising that its products containing fruit-juice concentrate "use real, whole fruits, juices, and purees" is entirely truthful.

Furthermore, as confirmed by the FDA regulation JonnyPops cites, fruit juice concentrates that are proportionally diluted into the final product (as they are in GoodPop's fruit pops) are treated as the nutritional equivalent of directly-expressed, unconcentrated juice.[4] Because

---

[4] JonnyPops commits several logical and legal fallacies in citing a regulation saying that "directly expressed" (*i.e.*, not-from-concentrate) juices are "considered to be 100 percent juice" as purportedly establishing the false premise that the FDA considers reconstituted concentrates to be not juice. *See* Resp. n. 12 (citing 21 C.F.R. § 101.30(i)). First, the claim that the FDA's statement establishes its converse is a basic logical fallacy: just as saying "all cats are mammals" offers no information about whether dogs are mammals—a statement about the juice content of directly-expressed juice says nothing about juices from concentrate. Second, JonnyPops ignores the FDA regulations establishing that when proportionally diluted into a final product, concentrated juice is the equivalent of the original expressed juice. Indeed, 21 C.F.R. §101.30(h)—immediately
(Continued...)

JonnyPops bases its claim that GoodPop products containing fruit concentrate do not contain "whole fruits, juices and purees" on nothing other than its own conclusory pronouncements—in the face of laws stating the opposite—it has failed to plead this claim.

*Second*, in its attempt to incorrectly categorize the fruit-juice concentrates in GoodPop's pops as "additives" instead of juice, JonnyPops rewrites the law governing "added sugar." Resp. at 12, n. 5; Compl. ¶ 37(b). Relying solely on an FDA web page that highlights information about added sugar for the general public, JonnyPops wrongly declares that "[t]he FDA considers concentrates a form of added sugar." Resp. n. 5 (citing www.fda.gov/food/nutrition-facts-label/added-sugars-nutrition-facts-label). JonnyPops' reliance on this oversimplified, nonauthoritative source elides the FDA's essential distinction between sugars from juice and "added sugars": the actual governing regulations define fruit-juice concentrates as "added sugars" *only if, after dilution* into the final product, their concentration is still "in excess of what would be expected from the same volume of 100 percent fruit or vegetable juice of the same type." 21 C.F.R. § 101.9(c)(6)(iii). In other words, GoodPop's fruit-juice concentrates *are juice* as explicitly defined by the FDA, **not "added sugar"** or any other type of "additive," when GoodPop reconstitutes them into its products at an effective final concentration of 100% single strength juice (or less)—as GoodPop always does in its products. JonnyPops does not allege otherwise. Because the Counterclaims do not—and cannot—plead that any of GoodPop's fruit-juice concentrates add sugars in excess of what would be expected from 100% juice, JonnyPops has failed to plead a factual basis to identify GoodPop's fruit-juice concentrates as anything other than legitimate "fruit

---

preceding the inapposite subsection JonnyPops cites—explains how the FDA calculates the "percentage of juice from concentrate found in a juice or juice beverage," namely, by comparing the concentration of juice solids in the final product to those found in unconcentrated juice. *Id*. None of this distinguishes appropriately diluted juice-from-concentrate from 100 percent juice.

5

juice" that has been concentrated then re-diluted. Thus, JonnyPops has pleaded neither a false statement nor consumer deception regarding the nature of GoodPop's fruit-juice concentrates.

*Third,* the Counterclaims assert false advertising because GoodPop's frozen ice-cream and non-dairy treats (*i.e.*, the Disney Mickey Mouse Fudge 'n' Vanilla Pop, the Fudge 'n' Vanilla Crunch Pop, the Fudge 'n' Caramel Crunch Pop, and the Chocolate Vanilla Sandwiches) do not contain fruit, juices, and/or purees. Resp. at 11-12. But JonnyPops identifies no statement GoodPop has ever made that suggests that these treats contain fruit. In its attempt to contrive a false advertising claim, JonnyPops avers that when GoodPop says "[t]he fruit in GoodPop is real and really good! We use real, whole fruits, juices and purees," this is a representation that *every single* GoodPop product contains fruit products. Compl. ¶ 37(b); Resp. at 11-12. But GoodPop's words simply do not carry this meaning. In plain English, GoodPop's statement describes the nature and quality of the fruit ingredients that are found in GoodPop products—with no representation as to *which* GoodPop products contain fruit ingredients. By JonnyPops' logic, a restaurant menu stating "we use dolphin-safe tuna," promises diners that tuna will be used in *every dish* at the restaurant, including the chocolate cake. This reasoning is absurd—JonnyPops' interpretation of GoodPop's words tortures the English language beyond plausibility. *See Elseroad*, 2024 WL 3404805, at *5 (dismissing false advertising claim as "untenable" because it "depends upon a reasonable consumer not only misunderstanding [the defendant's] claim, but entirely misreading it"). Unsurprisingly, the Counterclaims fail to identify any customer that has ever been deceived or might plausibly have been deceived into believing that GoodPop's non-fruit frozen treats contain fruit, but instead only cites customer statements that (accurately) laud the fruit and juice content of GoodPop's *fruit* pops. *See* Resp. at 13. JonnyPops has entirely failed to plead either a false representation or customer deception about the fruit content of GoodPop's products.

### 3. JonnyPops' "healthy for children" claim invents a statement that GoodPop never made and asserts unfounded and implausible consumer deception

JonnyPops' attempt to plead that depictions of happy kids eating GoodPop products are false advertising fails first and foremost because JonnyPops does not and cannot plead that GoodPop made the statement that its products are "healthy for children."[5] JonnyPops instead argues that GoodPop can be held liable for purportedly communicating that its treats are "healthy for children" through images that merely show a smiling child eating a frozen treat—devoid of any reference to health or nutrition.[6] JonnyPops' Counterclaims offer no supporting factual allegations, and its Response merely makes the conclusory allegation that GoodPop "present[s] itself as a defender of children's health and nutritional wellbeing."[7] Resp. at 14. But JonnyPops cannot state a claim by putting its own words in GoodPop's mouth; JonnyPops fails to plead any

---

[5] JonnyPops' Counterclaims do not assert as their factual basis the GoodPop's Complaint statements that JonnyPops points to in its Response, *i.e.*, that GoodPop seeks to meet consumers' demand for treats "sourced from healthy ingredients and not packed with heaps of added sugar." Resp. at 14. Nor can JonnyPops rely on this statement: it is not alleged, it is truthful, not commercial advertising or promotion, and protected by litigation privilege.

[6] Response n.8 misses the mark. GoodPop contests not that images can be actionable, but rather, that JonnyPops has plausibly pleaded that the images at issue convey any "healthy for children" message. *See* Dkt. 44 at 7-8. Furthermore, JonnyPops' reference to the "theory of 'false by necessary implication'" is dead on arrival: (1) the Fifth Circuit has not adopted this doctrine, *see Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 241 (5th Cir. 2014); (2) the doctrine can only apply when from the ad, "the audience would recognize the [alleged false] claim *as readily as if it had been explicitly stated*," Resp. at n.8, and this bar is not met by the alleged images merely showing kids eating popsicles; and (3) the doctrine applies "[o]nly [to] an unambiguous message" conveyed by the ad, whereas the images here cannot plausibly be described as *unambiguously* communicating a "healthy for children" message. *See Bracco*, 627 F. Supp. 2d at 465.

[7] JonnyPops asks what conclusion, other than that these products are "healthy for children . . . should a consumer draw from serial images of smiling children consuming GoodPop's products?" Resp. at 15. The obvious answer is: the same message conveyed by every ad—for items from candy bars to action figures—that shows smiling children with a product, *i.e.*, that children enjoy the product. JonnyPops does not allege that the images contain anything else to imply the product's healthiness. JonnyPops' claim fails to offer any plausible factual basis for the extraordinary leap that turns the image of a child eating a treat into a statement about the healthiness of that product.

7

statement by GoodPop representing that its products are healthy for children. *See Elseroad*, 2024 WL 3404805, at *5 (rejecting as "untenable" the theory that the plaintiff "misled consumers" who might infer an incorrect message from a true statement, because "as a simple matter of fact, [plaintiff] did not [make the allegedly misleading statement] in its advertising. It cannot be liable for misrepresentation because Plaintiffs" misinterpret the ad). GoodPop is one of countless food purveyors who use images of kids to advertise treats that kids enjoy.[8]

JonnyPops' Counterclaims also fail because they rely on conflating GoodPop's product lines: GoodPop's fruit pops are 100% juice with no added sugar, whereas its dairy-free treats and ice cream bars add unrefined sugar in lower quantities than comparable desserts typically use. The products JonnyPops alleges are deceptive are desserts whose names flag their sweet nature for consumers, with words like "Lemonade," "Fudge," "Double Chocolate," "Caramel," and "Cream Pop." Resp. at 14. JonnyPops identifies *no instance* in which GoodPop claimed these treats were "healthy for children," nor has JonnyPops plausibly pleaded that a consumer is likely to mistake a "Fudge n' Caramel Crunch Pop" or the other treats as being healthy.

Furthermore, JonnyPops pleads *no* factual basis for alleging that consumers have been deceived into believing "that GoodPop's high-sugar products are healthy for children, and buy them for that reason." *See* Resp. at 15 (citing Compl. at 37(c)). *None* of the consumer statements JonnyPops proffers suggest that GoodPop's treats are objectively "healthy," but rather state only that consumers and their children enjoy GoodPop's treats and consider them healthier than other options (a premise that JonnyPops' allegations do not contest). *See id*. Having failed to identify (a)

---

[8] Nor can JonnyPops bootstrap a counterclaim from GoodPop's alleged "hypocrisy," as JonnyPops identifies no way in which alleged hypocrisy in litigation gives rise to a false advertising claim. Furthermore, JonnyPops' conclusory and wrong contentions that GoodPop's products are not "safe for children," and are "higher in sugar than government guidelines allow" are devoid of legal and factual support – and were never "concede[d]" by GoodPop. *See* Resp. at 15.

any false claim GoodPop has ever made about the health attributes of its products, as well as (b) any consumer confusion about whether GoodPop' treats are objectively healthy, JonnyPops has wholly failed to "includ[e] factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 550 U.S. at 555).

### 4. *JonnyPops' packaging claim misunderstands the nature of GoodPop' ingredients and asserts an invented legal standard*

JonnyPops' allegations that the fruit images and fruit names on GoodPop's products are false advertising fail for multiple reasons. *First,* JonnyPops's claim that a product must contain the "whole fruit" before it can truthfully depict fruit on its packaging is absurd—no customer who sees whole cherries or oranges on a package expects to find stems and peel in the product. Resp. at 16. Yet JonnyPops pleads deception of a consumer who lauded the "delicious" "Valencia Orange coating" on GoodPop's Orange n' Cream Pop because, although the product's second ingredient is orange juice concentrate and it also contains orange extract, the coating is not made of "whole oranges" with the skin and seeds. *See* Compl. at ¶ 37(d). Under JonnyPops' hyper-literal proposition, a company selling fresh orange juice could depict only orange-colored liquid on its package—not an orange—because it does not contain "whole fruit." This plainly is not the law.

*Second*, as explained in Part B.2, *supra*, GoodPop's fruit-juice concentrates *are* fruit juice, and thus, the depiction of a fruit on a GoodPop' product that contains that fruit's juice concentrate—like the cherries on the Cherry n' Lemonade Pop package—is truthful. And JonnyPops' proffered consumer comments on the product's cherry juice content are accurate, and thus fail to provide any evidence of consumer deception. *See* Resp. at 16.

*Third*, JonnyPops cannot plead a claim simply by misconstruing GoodPop' product names. JonnyPops argues that GoodPop' depiction of a lemon on its "Cherry n' Lemonade Pops" is false advertising because the lemon juice in this product "is not a primary ingredient"—ignoring that

9

the product states "Lemonade" rather than lemon, lemons are not the primary ingredient in *actual lemonade*, and lemonade is routinely marketed with images of lemons. Similarly, JonnyPops tries to allege that GoodPop's "Strawberry Shortcake Pop" falsely advertises strawberry content, even though this product is named *after a dessert*—Strawberry Shortcake—not a fruit, the package prominently declares "made with organic ice cream," and strawberries are the fourth ingredient, after milk, sugar, and milkfat. *See* Dkt. 37, Ex. 2 at 8. Again, JonnyPops' attempt at tit-for-tat pleading fails to allege facts sufficient to state a claim against GoodPop. *See Elseroad*, 2024 WL 3404805, at *4 (dismissing because "it is well settled that a court may determine as a matter of law that an allegedly deceptive practice would not have misled a reasonable consumer" (cleaned up)).

### 5. *JonnyPops' "organic" claim arbitrarily redefines the word "organic"*

JonnyPops alleges *nothing* false or deceptive about GoodPop's use of the USDA Organic symbol, or any consumer's understanding therof. GoodPop offers *no* support for its proclamation that the USDA Organic symbol on a product means the product is not just organic, but also "healthy, low in sugar, and 'better for you.'" Resp. at 17. JonnyPops' allegation that some consumers highlight the organic nature of GoodPop products while also noting their other virtues in no way suggests that the customers are misunderstanding the term organic. *See* Dkt. 44 at 17. *See Elseroad*, 2024 WL 3404805, at *5 (rejecting the premise that "literally true statements" could still deceive consumers because, like "USDA Organic," "the [advertised] statement 'free from PFOAs' has only one reasonable meaning: that the product is free from PFOAs"). JonnyPops cannot state a claim by redefining the term "organic" with no factual basis.[9]

---

[9] Nor can JonnyPops cobble together a claim by amalgamating statements it has tried—and failed—to plead as individually false into some purported synergistic "false impression." *See* Resp. at 17. Indeed, this Court recently rejected as "untenable" a similar attempt to extrapolate a misleading advertising claim. *See Elseroad*, 2024 WL 3404805, at *5.

| | |
|---|---|
| Dated: July 10, 2025 | Respectfully submitted, |

*/s/ Leah Bhimani Buratti*
Leah Bhimani Buratti
**BOTKIN CHIARELLO CALAF PLLC**
Leah Bhimani Buratti, TX Bar No. 24064897
leah@bccaustin.com
1209 Nueces Street
Austin, TX 78701
Telephone: (512) 615-2341

**HUESTON HENNIGAN LLP**
John C. Hueston, CA State Bar No. 164921
jhueston@hueston.com
(*pro hac vice*)
Sourabh Mishra, CA State Bar No. 305185
smishra@hueston.com
(*pro hac vice*)
Christine M. Woodin, TX Bar No. 24100051
cwoodin@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of July 2025, a true and correct copy of the foregoing document was served on all counsel of record who have appeared in this case using the Court's CM/ECF system as a Filing User.

/s/ *Leah Bhimani Buratti*
Leah Bhimani Buratti