UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| AUSTIN'S NATURAL FROZEN POPS, INC., d/b/a GOODPOP, <br><br> Plaintiff/Counter-Defendant, <br><br> v. <br><br> JONNY POPS, LLC, <br><br> Defendant/Counter-Plaintiff. | No. 1:24-cv-716-RP |

**DEFENDANT/COUNTER-PLAINTIFF JONNYPOPS' MOTION TO COMPEL
FINANCIAL DATA AND REASONABLE CUSTODIAL SEARCHES**

Eight months into fact discovery, Plaintiff/Counter-Defendant Austin's Natural Frozen Pops, Inc., d/b/a GoodPop ("GoodPop") has produced an implausibly thin stack of internal documents and has refused to produce core evidence. Specifically, GoodPop has withheld ordinary-course financial records, narrowly confined its electronic search, and omitted key executives from its collection of potentially relevant documents. This has resulted in a deficient production that prejudices the ability of Defendant/Counter-Plaintiff Jonny Pops, LLC ("JonnyPops") to defend itself against GoodPop's claims and pursue its own counterclaims against GoodPop. JonnyPops' extensive efforts to resolve these issues through conferrals have been unsuccessful, necessitating this motion.

JonnyPops therefore seeks an order compelling GoodPop to: (1) produce the financial records pertinent to both parties' damages theories; (2) include Alex Prosperi and Katherine Pollard as document custodians; and (3) run adequate search terms across the files of all relevant custodians. Each request is targeted, proportional, and indispensable to resolving the merits. The Court should grant the motion and direct GoodPop to comply without further delay.

I.   BACKGROUND

    A.   **Procedural Background**

JonnyPops and GoodPop are competitors in the marketplace for frozen pops. As JonnyPops has grown and achieved greater success, it attracted the attention (and ire) of GoodPop, which has lagged significantly behind. At the same time, GoodPop ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. A hereto (GOODPOP00031672) at 7. While GoodPop ▮▮▮▮▮▮▮▮▮ (Ex. B hereto (GOODPOP00033741)) and a ▮▮▮▮▮ (Ex. C hereto (GOODPOP00032235)), they ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. D hereto (GOODPOP00036862)). To ▮▮▮▮▮▮▮▮▮▮▮, GoodPop filed this suit in June 2024, asserting claims for false advertising and unfair competition. Dkt. 1.

In May 2025, JonnyPops filed its Amended Counterclaims, alleging that GoodPop engages in false advertising and unfair competition. Specifically, GoodPop deceives consumers by making false claims about the sugar content and nutritional value of its products. Dkt. 37 ¶¶ 40-62. On its website, product packages, and other marketing materials, GoodPop falsely represents that its products "never have … refined sugars," even though many of its products contain significant amounts of refined sugar, in the form of cane sugar. *Id.* ¶¶ 9, 36(a). GoodPop misleadingly claims that its products contain only "whole fruits, juices and purees," even though many consist largely of fruit concentrates and other additives, and GoodPop's packaging showcases images of fruit that are not the exclusive or even primary ingredients of those products. *Id.* ¶¶ 8, 10, 36(b), 36(d), 36(e). GoodPop also frequently features children in its advertising to further its deception and mislead consumers into believing that its products are healthy for children. *Id.* ¶ 12.

B.     **Production and Conferral History**

JonnyPops promptly sought relevant evidence from GoodPop, issuing its First Set of Requests for Production in January 2025 and then additional Requests for Production and Interrogatories in May and June 2025. Over these eight months, GoodPop has made a meager production of documents and refused reciprocal transparency in the discovery process. As JonnyPop noted at the July 18, 2025 discovery hearing, GoodPop for months rejected JonnyPops' repeated request that the parties mutually agree on search terms and custodians, waiting until last month—two days before the hearing—to disclose its own custodians and search parameters, while refusing to share hit counts.

Moreover, despite GoodPop insisting it "substantially completed" its production of documents on July 1, 2025, well over half of GoodPop's production consists of public advertisements and reports—most of them printouts from public webpages. GoodPop produced fewer than 2,000 emails covering a seven-year period, and its production includes fewer than 4,000 non-public documents. By contrast, JonnyPops has produced over 10,000 internal documents, including over 5,800 emails, and JonnyPops has continued to make rolling productions. JonnyPops has produced more than 1,200 additional documents since the July 18 hearing, while GoodPop has produced just nine.

GoodPop's decision to withhold its custodians and search parameters until July 16 delayed discovery and revealed large gaps in GoodPop's process for identifying responsive documents. *First*, GoodPop did not designate as custodians several key executives directly involved in the marketing and sales of GoodPop's products, including former Director of Marketing & Innovation Alex Prosperi and VP of Operations Katherine Pollard. *Second*, GoodPop's search terms were not tailored to the claims and defenses in this case. Indeed, GoodPop failed to develop search terms to identify responsive documents for many of JonnyPops' Requests for Production, and many of

3

GoodPop's search terms were ineffective. For example, GoodPop's search terms covering its advertising and marketing covered only four products—*none* of which were the high-sugar products identified in JonnyPops' Counterclaims. Moreover, GoodPop did not include a single search term addressing its market share, despite agreeing to respond to Requests for Production concerning market share.

GoodPop's deficient process not surprisingly resulted in a deficient production. For a multi-year period, GoodPop produced only 26 emails involving former COO/CFO Whitney Williams, 184 emails involving Senior Brand Manager Jessica Mason, and 329 emails involving Brand Marketing Director Kristi Kleila. Likewise, GoodPop's production of key financial data is incomplete. For example, GoodPop has *not* produced:

- Annual and quarterly sales, profits, revenue, and costs data for the period 2020 to 2025;
- Complete sales, profits, revenue, and costs data for the period preceding 2020;
- Complete price lists for all products at issue;
- Marketing expenditure data from January 2018 to September 2022, November 2022 to August 2023, October 2023 to May 2024, July 2024, or September 2024; or
- Any marketing expenditure data broken down by product line.

JonnyPops raised these issues repeatedly, including in written correspondence on July 29 and August 7, 2025. The Parties conferred telephonically on August 14 and 15. During these conferrals, GoodPop misconstrued JonnyPops' Counterclaims, refused to address the deficiencies JonnyPops raised, and/or rebuffed sharing a timeline for supplementing its discovery responses and production.

## II. ARGUMENT

GoodPop's discovery has been substantially deficient. Despite its "obligation to conduct discovery in a diligent and candid manner," *Brown v. Bridges*, 2015 WL 410062, at *6 (N.D. Tex.,

4

Jan. 30, 2015), GoodPop has: (1) failed to produce the basic financial data described above; and (2) conducted facially inadequate custodial searches, in terms of both custodians and search terms. With court-ordered substantial completion of document discovery in less than a month, Dkt. 71, JonnyPops is left with no choice but to seek the Court's assistance. GoodPop should be compelled to fulfill its obligations and produce the evidence to which JonnyPops is entitled.

### A.   Deficiencies in GoodPop's Financial Production

GoodPop has not produced a complete set of relevant financial records, which is evidence critical to JonnyPops' ability to prove damages emanating from GoodPop's misconduct (as alleged in the Counterclaims) and rebut GoodPop's claim of harm (as alleged in the Complaint).[1] These documents include GoodPop's financial records showing its revenues, costs, and pricing, as well as its market share over time. Without this information, JonnyPops cannot fully develop its damages theory or challenge GoodPop's claims, prejudicing JonnyPops' ability to present its case.

GoodPop possesses the documents and data at issue, as demonstrated by its sporadic production to date, including a single income statement and price list from 2021 and marketing expenditure data from only limited periods. GoodPop should promptly produce *complete* financial records from 2018. These include: (i) annual and quarterly sales, profits, revenue, and costs data for the period 2020 to 2025; (ii) complete sales, profits, revenue, and costs data for the period preceding 2020; (iii) complete price lists for all products at issue; (iv) marketing expenditure data from January 2018 to September 2022, November 2022 to August 2023, October 2023 to May 2024, July 2024, and September 2024; and (v) marketing expenditure data broken down by product line. These documents are relevant to JonnyPops' affirmative claims and defenses. *See Via Vadis,*

---

[1] Such documents are responsive to at least JonnyPops' Requests for Production Nos. 10, 11, 15, 16, 67, and 70.

*LLC v. Blizzard Ent., Inc.*, 2021 WL 3081310, at *5 (W.D. Tex. July 21, 2021) ("[T]he financial information Plaintiffs request … may be relevant to Plaintiffs' damages theory and therefore is discoverable.").[2]

In conferrals, GoodPop did not contest relevance but nevertheless refused to confirm whether and by when it would produce the requested financial records, prejudicing JonnyPops' ability to schedule and prepare for fact depositions and expert discovery. GoodPop should produce responsive documents without any further delay.

### B.    Deficiencies in GoodPop's Custodian Selection

GoodPop has not satisfied its obligation to identify and produce relevant evidence using reasonable custodians likely to possess such evidence. GoodPop chose not to designate several key current and former employees as custodians, and it has produced few documents from the custodians it did designate due to insufficient search terms. GoodPop represented that it identified custodians "most likely to have the greatest number of the most relevant and responsive documents," but it was required identify and collect from the custodians "most likely to possess responsive information"—not merely those *most* likely to possess the *greatest* number of the *most* relevant documents. *Entergy Gulf States La., L.L.C. v. La. Generating, L.L.C.*, 2021 WL 24686, at *7 (M.D. La. Jan. 4, 2021). Moreover, despite acknowledging that the parties should designate the same number of custodians, GoodPop has designated eight custodians, while JonnyPops has designated ten.

At minimum, GoodPop should be compelled to designate Mr. Prosperi and Ms. Pollard as custodians, which would bring both parties to ten custodians total.

---

[2] GoodPop already agreed to produce such documents in response to JonnyPops' Requests for Production Nos. 10, 11, 15, 16, 67, and 70, and has requested the same categories of documents from JonnyPops.

6

- Mr. Prosperi was GoodPop's Director of Marketing & Innovation between 2022 and 2024. In this role, he was ████████████████████████████████████████ ████████████████████████████████ Ex. E hereto (GOODPOP00035504). GoodPop identified Prosperi as one of five individuals with knowledge of the marketing, advertising, and design of GoodPop's products, only two of whom—Jessica Mason and Kristi Kleila—are custodians. Ex. F hereto (Supp. Response to Interrogatory No. 1); Ex. G hereto (Response to Interrogatory No. 16). Prosperi, however, authored, received, or is mentioned in just 27 documents within Mason and Kleila's custodial documents, suggesting that his unique contributions and insights are not cumulative of GoodPop's existing production. Prosperi was also ████████████████ ████████████████████████████████████████████████████████. Ex. H hereto (GOODPOP00004126).

- Ms. Pollard has been GoodPop's VP of Operations since June 2024, and previously held supply chain and logistics titles at GoodPop since February 2019. As VP of Operations, Ms. Pollard is involved in critical discussions regarding order fulfillment and supply chain management, which are essential for understanding GoodPop's operational strategies and usage of refined sugars. Pollard, however, only appears on 48 emails within GoodPop's production. Furthermore, GoodPop has not designated any of Pollard's direct reports as custodians, indicating a notable gap in capturing the operational insights and strategic contributions from GoodPop's operation team.

Because each of these custodial files "likely includes evidence relevant to the claims or defenses in the case, and [they are] likely to have unique information not available through the other designated custodians," GoodPop should be compelled to collect, search, and produce from these two additional custodial files. *See Entergy Gulf*, 2021 WL 24686, at *3.

C. **Deficiencies in GoodPop's Search Terms and Application**

GoodPop has also failed to identify and produce relevant evidence using reasonable search terms applied across custodians. Further, GoodPop's statements during conferrals suggest that it is also using an unreasonably narrow view of JonnyPops' claims to assess responsiveness— including by incorrectly insisting that JonnyPops has not alleged that GoodPop made deceptive health and nutrition claims about its products, despite the Counterclaims expressly so alleging. Dkt. 37 ¶¶ 36-39. GoodPop should be compelled to promptly resolve these issues.

Although GoodPop's marketing is at the core of JonnyPops' Counterclaims, GoodPop limited its key marketing searches to four products—Assorted Junior Pops, Orange Cherry Grape, Organic Freezer Pops, and Cherry n' Lemonade—while omitting the high-sugar products identified in JonnyPops' Counterclaims, including the Hibiscus Mint Pop, Strawberry Lemonade Pop, and Strawberry Shortcake Pop. *See* Dkt. 37 ¶ 30. GoodPop has not justified this narrow search. In fact, discovery has already revealed that ███████████████████████ ████████████████████████████████████████, Ex. A at 7—which supports JonnyPops' claims. GoodPop's exclusion of products that form the root of JonnyPops' Counterclaims is troubling and highlights its narrow interpretation of JonnyPops' claims in this case related to GoodPop's misleading marketing.[3]

Similarly, GoodPop failed to run a single search term related to its advertising on social media sites. GoodPop agreed to produce documents responsive to Requests for Production No. 43, which requested "All Communications and Documents concerning Your advertising of Your Products on any third-party online platform, including but not limited to Facebook, Instagram, Snap/Snapchat, Pinterest, TikTok, YouTube, and/or Google." But GoodPop did not mention "Facebook," "Instagram," "Snap," "Pinterest," "TikTok," "YouTube," or "Google" in any of its search terms. GoodPop likely missed responsive documents due to its failure to tailor its search terms to the Requests for Production to which it agreed to respond.

Additionally, GoodPop did not include a single search term regarding any of its products' market share. As described above, *see supra* Part I.A, understanding GoodPop's market share is

---

[3] After days of meet and confers, GoodPop made an eleventh-hour offer just before filing "to adapt [these terms] to include the other products addressed in your amended counterclaims." JonnyPops moves on this issue because GoodPop still has not explained how it will "adapt" the terms or shared the specific terms it intends to run.

crucial to both parties' damages analyses. Recognizing this, GoodPop agreed to produce documents responsive to Requests for Production Nos. 15 and 16, each seeking documents related to GoodPop's actual or projected market share. Its failure to include any search terms that would yield responsive documents—or even a single search term using the term "market share"—makes it likely that many responsive documents will not be produced. GoodPop should be compelled "to use search terms or key words likely to generate responsive documents" and to produce all documents responsive to JonnyPops' Requests for Production. *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, 2025 WL 592484, at *4 (N.D. Tex. Feb. 24, 2025).

## III. CONCLUSION

For the foregoing reasons, JonnyPops respectfully requests that the Court issue an order compelling GoodPop to (1) produce the financial records responsive to Requests for Production Nos. 10, 11, 15, 16, 67, and 70; (2) add Alex Prosperi and Katherine Pollard as custodians; and (3) run adequate search terms across the files of all relevant custodians. JonnyPops respectfully requests that this motion be heard at the hearing currently scheduled for September 3, 2025, at 9:00 a.m.

| | |
|---|---|
| DATED: August 20, 2025 | LATHAM & WATKINS LLP |
| | |
| | /s/ *Steven N. Feldman* |
| | Steven N. Feldman (*pro hac vice*) |
| | New York Bar No. 4775052 |
| | 1271 Avenue of the Americas |
| | New York, NY 10020 |
| | Tel: (212) 906-1821 |
| | Fax: (213) 891-8763 |
| | steve.feldman@lw.com |
| | |
| | Gary Feinerman (*pro hac vice*) |
| | Illinois Bar No. 6206906 |
| | 330 North Wabash Avenue, Suite 2800 |
| | Chicago, IL 60611 |
| | Tel: (312) 777-7110 |
| | Fax: (312) 993-9767 |
| | gary.feinerman@lw.com |
| | |
| | Nicholas L. Schlossman |
| | Texas Bar No. 24093117 |
| | 300 Colorado St., Suite 2400 |
| | Austin, TX 78701 |
| | Tel: (737) 910-7314 |
| | Fax: (737) 910-7301 |
| | nicholas.schlossman@lw.com |
| | |
| | *Attorneys for Defendant/Counter-Plaintiff Jonny Pops LLC* |

**CERTIFICATE OF CONFERENCE**

      I hereby certify that on August 14 and 15, 2025, counsel for Defendant/Counter-Plaintiff and Plaintiff/Counter-Defendant met and conferred regarding the subject matter of this motion. Counsel for GoodPop indicated that it opposed the subject matter of this motion on burden grounds or would not commit to a timeframe for providing a response.

Dated: August 20, 2025                                      /s/ *Leah Friedman*
                                                                                       Leah Friedman

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 20, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record who have appeared in this case.

                                      */s/ Steven N. Feldman*
                                      Steven N. Feldman