**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **AUSTIN'S NATURAL FROZEN POPS,** | § | |
| **INC. d/b/a GOODPOP,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CASE NO. 1:24-CV-716-RP** |
| **vs.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **JONNY POPS, LLC** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL**
**FINANCIAL DATA AND REASONABLE CUSTODIAL SEARCHES**

Defendant/Counter-Plaintiff Jonny Pops, LLC ("JonnyPops") Motion to Compel ("Motion") (Dkt. 76) is another tit-for-tat filing, this time in response to Plaintiff/Counter-Defendant Austin's Natural Frozen Pops, Inc., d/b/a GoodPop's ("GoodPop") effort to enforce the Court's July 18, 2025 Order (Dkt. 65). In JonnyPops' rush to file its Motion, it asserts issues that (1) have already been mooted, because GoodPop has provided the materials (just as it represented to JonnyPops it would); or (2) are not ripe for consideration (because GoodPop has agreed to produce the materials). Just one issue remains disputed, but JonnyPops fails to show the need for additional social media-related documents. JonnyPops' Motion should be denied.

## I.     RELEVANT BACKGROUND

### A.  GoodPop Files Suit, JonnyPops Counterclaims (sort of)

GoodPop sells "better-for-you" frozen treats and prides itself on making certain products using 100% fruit juice and no added sugar. JonnyPops launched products that bear a remarkable resemblance to GoodPop's products—mimicking GoodPop's flavor profiles and package design. But JonnyPops markets its products using deceptive practices (for example, packaging with images of fruit that the products do not contain), that have misled consumers and retailers and harmed GoodPop's market position. To combat JonnyPops' deceptive and misleading practices, GoodPop asserts claims under the Lanham Act and California's Unfair Competition Law. Dkt. 1 at 25-28. After the Court denied JonnyPops' Motion to Dismiss, Dkt. 31, JonnyPops asserted me-too counterclaims that, "if the Court or the jury ultimately finds [that JonnyPops' advertising practices are deceptive and misleading], then GoodPop, through its use of comparable advertising practices, has also made misleading and deceptive statements, thereby harming JonnyPops." Dkt. 37 at 18.

### B.  GoodPop Has Reasonably and Diligently Conducted Discovery

GoodPop has endeavored to be responsive and forthcoming in the discovery process, and thus, has agreed to supplement responses when JonnyPops makes reasonable requests. Although

GoodPop's document production is not massive in terms of pure numbers, it is highly responsive. The number of custodians and size of the production are also commensurate with GoodPop's relatively small number of employees for most of its existence. JonnyPops, in contrast, has obfuscated and delayed, repeatedly declining to respond to discovery unless it's "reciprocal" and refusing to engage regarding document production unless the parties exchange search terms.[1]

Indeed, throughout this case the parties have had a fundamentally different view of how discovery should proceed. *See* Dkt. 39 at 9-10. GoodPop's position is that RFPs, as contemplated by the Federal Rules, control document discovery. *See, e.g.*, Ex. 1 at 28-29 (Buratti 8/12 email). JonnyPops' position appears to be that search terms control document discovery, and the only way to conduct and evaluate document discovery is through the exchange and negotiation of search terms. *E.g.*, *id.* at 39-41 (Friedman 8/4 Email); *see also* Dkt. 39-5 at 27 (Friedman 3/6 email).

It appears that JonnyPops has not even evaluated the substance of GoodPop's production. Had it done so, JonnyPops would have observed that: (1) GoodPop long ago (February 18) produced robust financial information—far more robust than JonnyPops' production of financial information up until August 15, when it finally produced similar information in response to the Court's July 18 Order; (2) GoodPop's custodians cover the same topics and subject matter as Alex Prosperi's and Kat Pollard's files; and (3) GoodPop's search terms and manual collection of

---

[1] JonnyPops has repeatedly faulted GoodPop for not agreeing to conduct discovery in accordance with JonnyPops' unilateral demands, specifically: (1) document discovery via negotiation of search terms, and (2) reciprocity in discovery requests. Dkt. 39-5 at 20, 27. JonnyPops has sought to create its own rules of engagement, and repeatedly chastises GoodPop for choosing to abide by the Federal Rules' well-settled and prescribed means of conducting discovery, rather than JonnyPops' demands.

As GoodPop has repeatedly explained to JonnyPops, full reciprocity of discovery would make no sense because GoodPop's claims and JonnyPops' counterclaims are very different. *E.g.*, Ex. 1 at 41 (Buratti red-text resp. to Friedman 8/4 email). GoodPop contends that JonnyPops' claims lack any basis, *see* Dkt. 44, but at a minimum, JonnyPops' counterclaims depend on different facts and legal theories. *See id*. And GoodPop never agreed to a search term process because the negotiation leads to disputes and delay, provides an excuse for parties to avoid using their client's knowledge and terminology to identify responsive documents, and the process was not even suggested in the Rule 26 conference at the outset of the case. *See* Dkt. 25.

documents have already sufficiently elicited responsive documents regarding market share, advertising, and the counterclaim products. But rather than evaluating GoodPop's production in terms of documents responsive to JonnyPops' RFPs, JonnyPops instead complains about it in sweeping generalities—in terms of number of documents, custodians, and search terms.

JonnyPops' Motion strips important context. For example, it complains about the proportion of GoodPop's production comprised of public webpages and ads, *see* Dkt. 76 at 3, but ignores the fact that JonnyPops requested production of *exactly* those materials, requests with which GoodPop expended substantial time and resources to comply. *E.g.*, Ex. 2 (JonnyPops' RFPs 1, 3, 19, 43, 44, 45). If JonnyPops did not want those documents, it should not have specifically requested them and spared GoodPop the time and expense of gathering and producing them.

Similarly, JonnyPops' attempt to turn compliance with the Federal Rules into a game of comparing document production numbers is laughable—GoodPop substantially completed its production of documents on July 1, 2025—as the parties had previously agreed, but JonnyPops recanted—so it is unsurprising that JonnyPops has produced more documents since entry of the Court's July 18 order *compelling JonnyPops to do so.*

### C. JonnyPops Preemptively Filed Its Motion to Compel

In its eagerness to file a tit-for-tat Motion to Compel, JonnyPops did not follow the letter or spirit of the Local Rules regarding meaningful conference prior to filing a discovery motion. *See* Loc. R. CV-7(G). As discussed below, JonnyPops did not meet and confer on its request for Kat Pollard's documents; it filed its Motion on search terms that GoodPop has already agreed to produce responsive documents for; and did not permit GoodPop a reasonable amount of time to respond with its position regarding Prosperi's documents (which it agrees to produce).

JonnyPops also refused to tell GoodPop's counsel that it would be filing this Motion.

3

JonnyPops sent an email to GoodPop on August 20 demanding that GoodPop respond to a request to file a Motion to Seal within 55 minutes. Ex. 3 at 5 (Edelman 8/20 11:35 a.m. ET email). GoodPop's counsel responded that it would get back to JonnyPops promptly, but would not be able to do so on the timeline demanded—and inquired about the reason for such an urgent demand. *Id.* at 3-4 (Buratti email of 11:44 a.m. CT). GoodPop also reasonably inquired as to what motion JonnyPops intended to file, explaining that in GoodPop's view, no issue was ripe, but JonnyPops refused to answer. In addition to inquiring via email, GoodPop's counsel called three of the lawyers on JonnyPops' team to discuss the mysterious forthcoming motion and left voicemails—none of the three lawyers have returned the phone calls. *Id.* at 2-3 (Buratti email of 12:29 p.m. CT).[2]

## II.    ARGUMENT

JonnyPops' motion asks for three things: (1) "financial records responsive to Requests for Production Nos. 10, 11, 15, 16, 67, and 70"; (2) the addition of Alex Prosperi and Katherine Pollard as custodians; and (3) that GoodPop run "adequate" search terms "across the files of all relevant custodians." These requests are either moot or unripe, or otherwise should be denied.

### A.  Financial Records

GoodPop either already has or will soon produce the financial information identified in JonnyPops' Motion, if it is available.

### 1.  *GoodPop has Already Produced Robust Financial Information*

GoodPop has produced many financial statements covering portions of the relevant period. This includes P&L Statements on an annual basis from 2018-2019 (GOODPOP0000011) and 2019-2024 (GOODPOP0000004), Sales by Product, 2018-2020 (GOODPOP00000251), Sales by

---

[2] In same vein, GoodPop requested an extension of time on this response (both due to its counsel's out-of-office commitments, and the anticipated mootness and/or lack of ripeness on the issues in the Motion), but JonnyPops flatly refused. *Id.* at 1 (Edelman 8/21 email).

Product 2021-2024 (GOODPOP00000252) (all produced Feb. 18, 2025); Gross Sales by Product Category, Net Sales by Product Category, Gross Profit, and Net Income on an annual (2020-2023) and monthly basis (Jan. 2023 to May 2024) (GOODPOP00005120, produced on June 10, 2025), among others. Likewise, GoodPop has produced marketing expenditure data for the months identified in the Motion. JonnyPops' complaint that such data was not broken down by product line is ironic, given (1) its original request for this information only requested "Documents sufficient to show all advertising expenditures *relating to* Your Products," without specifying any product-line breakdown in its original RFPs, *compare* Ex. 2, RFP No. 22 to *id.*, RFP No. 67 (served May 18, 2025, merely mirroring GoodPop's similar request), and (2) its enduring refusal to produce exactly that. Ex. 1 at 42-43 (Friedman 7/30 Email).

### 2. *JonnyPops Moved to Compel Prematurely—GoodPop has Agreed to Supplement Its Financial Production*

JonnyPops did not turn its attention to GoodPop's financial documents—produced on February 18—for nearly six months. On August 7, JonnyPops requested supplemental financial documents, unreasonably demanding their production by August 14. Ex. 4 at 2.

In stark contrast to JonnyPops' protracted failure to respond to GoodPop's long-outstanding requests for relevant financials,[3] *see, e.g.*, Ex. 5 (GoodPop 1/27 RFPs 44, 45, 51), since receiving JonnyPops' request for supplemental financial documentation on August 7, GoodPop has responsively begun to produce those materials, most recently on August 22, 2025. GoodPop does not dispute the relevance of these documents and has agreed to produce each of the financial data categories identified, to the extent such documents exist.[4]

---

[3] By way of contrast, GoodPop had reiterated its request for substantive and responsive financials, several times over the course of 7 months, Ex. 14 p.9 (Valera 8/14 email); the Court ordered production of the financials, Dkt. 65, and yet JonnyPops still did not produce the financials, Ex. 16 at 1-3—it only partially produced the financials a few days after GoodPop stated that it intended to return to the Court to enforce the order, *id.*

[4] GoodPop is continuing to review available financial data.

JonnyPops claims that GoodPop "refused to confirm [1] *whether and* [2] *by when* it would produce the contested financial records." Dkt. 76 at 6 (emphasis added). Yet, on the very same page, it acknowledges the falsity of the first of those claims: "GoodPop already agreed to produce such documents in response to JonnyPops' Requests for Production Nos. 10, 11, 15, 16, 67, and 70." Dkt. 76 at 6, n.2. The second part is equally untrue—the day before JonnyPops filed, GoodPop committed to "respond as soon as possible, but by early next week." Ex. 6 at 2 (8/19 Buratti email). As it had committed to JonnyPops, GoodPop already has or will soon produce the requested financials, if they exist. Further, when JonnyPops raised missing sales, profits, revenue, and cost data for years before 2020, GoodPop agreed to supplement its production accordingly, and has done so in part, and will soon do so for the remainder. *See, e.g.*, Ex. 7 at 1 (8/18 Buratti email) ("For 70, we agree to produce responsive documents located after a reasonable search.").

## B.    Custodians Alex Prosperi and Kat Pollard

GoodPop will produce responsive documents from Prosperi and Pollard's files and available email, and as of August 27, 2025, has begun a rolling production of those documents. Ex. 8. As GoodPop has just informed JonnyPops, not all of Prosperi's email account is available for search and production, but over 15,500 emails have been identified: responsive documents from that email and his Google Drive files (which are intact) will be produced. Ex. 9. In any event, GoodPop's selection of custodians has been entirely appropriate: it has properly identified the people most likely to possess responsive information.

### 1.    *GoodPop Did Not "Withhold" Its List of Document Custodians*

GoodPop did not "withhold its custodians." Dkt. 76 at 3. Rather, GoodPop's original five custodians were the individuals listed in its Initial Disclosures on January 22, 2025,[5] and then (on

---

[5] Whitney Williams, Daniel Goetz, Jessica Mason, Kristi Kleila, and Jessica Mason.

its own initiative) GoodPop added two custodians.[6] The list of the initial five custodians has been readily available to JonnyPops all along: in the populated "custodian" field in the metadata for its document production—where such information belongs, can always be found, and to which GoodPop directed JonnyPops on multiple occasions. *See, e.g.*, Dkt. 39-12 at 2. GoodPop informed JonnyPops via email that it would be adding the two additional custodians. Ex. 1 at 43 (Buratti red-text resp. to Friedman 7/30 email). And when JonnyPops requested the addition of Rahul Shah as a custodian on July 29, GoodPop agreed. Ex. 13 at 1 (Buratti 8/13 email).

GoodPop produced its org charts on February 18, in which Pollard appears, and updated its interrogatory responses to identify Prosperi and Pollard as individuals with knowledge on May 22. Ex. 10 (Interrog. 1 Supp Resp.). JonnyPops waited until June 16 to serve an interrogatory to confirm GoodPop's custodians, but GoodPop timely answered. *See* Ex. 11 (Resp. to Interrog. 16). This all makes JonnyPops' indignance at having only recently "discovered" the "omission" of Prosperi and Pollard as custodians somewhat inexplicable. Dkt. 76 at 6. JonnyPops cannot plausibly claim any *surprise* at Prosperi or Pollard not being custodians.

JonnyPops' real problem with GoodPop's custodians is that JonnyPops designated ten and GoodPop designated eight. GoodPop did not concede that "the parties should designate the same number of custodians," *id.*,[7] and the Federal Rules impose no numerical parity requirement.

### 2.  *JonnyPops Failed to Appropriately Confer and Moved Preemptively*

Contrary to the impression left by the Motion's craftily-worded certificate of conference, JonnyPops did not meet and confer on a request to add Pollard as a custodian. Rather, JonnyPops

---

[6] Carter Calico and Jennifer Stanaland. Ex. 1 (Buratti red-text resp. to Friedman 7/30 email; Aug. 11 email).

[7] What GoodPop actually said was that, if JonnyPops wanted to reach deeper into GoodPop's marketing team for documents, then JonnyPops should do likewise, such as by finally designating Jake Achterhoff, its director of marketing for the relevant period. *See* Ex. 14 at 5, 10. (JonnyPops has thus far refused to do so, despite a atpromise that it would provide GoodPop with an answer as to whether or not it intended to so by August 18.)

sent one letter and one follow-up email, including Prosperi and Pollard among six other proposed new custodians. GoodPop responded substantively. *See* Ex. 13 at 1 (8/13 Buratti email). The parties then conferred regarding Prosperi—but not Pollard. Ex. 14 at 7 (8/21 Buratti email).

This hardly constitutes an "extensive effort" to resolve the "dispute" regarding these custodians that JonnyPops claims: its July 29 letter simply *listed* eight individuals and demanded an explanation as to why they had not been custodians. *See* Ex. 12.[8] The meet and confer that addressed Prosperi took place on August 14, just a few days before JonnyPops filed its Motion. At the time that JonnyPops filed its Motion, GoodPop was still considering JonnyPops' request that it add more custodians—and was well within the timeframe to which it committed. Failing to acknowledge that, JonnyPops filed its Motion.

C.    **Search Terms**

JonnyPops' scattershot complaints about GoodPop's search terms are equally meritless.

***Social Media.*** Although JonnyPops has expressed its frustration with the fact that GoodPop produced publicly-available social media pages from Facebook, Instagram, and TikTok in response to JonnyPops' request that it do so (including in this Motion, Dkt. 76 at 3), JonnyPops also incongruously argues that GoodPop's social media related searches "likely missed responsive documents," and demands that GoodPop search for words like "Google" and "Facebook." *Id.* at 8.

The Court need not take up JonnyPops' argument for several reasons.[9] First, and again, JonnyPops fails to identify an *actual* deficiency in GoodPop's production. Second, GoodPop

---

[8] GoodPop did add Carter Calico and Rahul Shah as custodians. As GoodPop explained to JonnyPops, it did not designate Prosperi because his documents were anticipated to be duplicative of GoodPop's already-designated custodians. As for JonnyPops' statement that Prosperi was GoodPop's contact for the vendor platform on which the Complaint Survey was conducted, *see* Dkt. 75 at 7, Prosperi left GoodPop before the survey was conducted.

[9] It is not clear that this issue is even ripe. Although there are passing references to RFP 43 in email between the parties, *see* Ex. 13 (Friedman 8.13 email), this issue has not been discussed on any meet and confer to the best of GoodPop's counsels' recollection, nor does written correspondence confirm such a discussion.

otherwise conducted a thorough, platform-agnostic search for internal communications and documents related to advertising—these broad searches should capture responsive discussion of social media advertising and marketing. *See id.*, Ex. 11 at Ex. A (highlighted terms at 1-3). And GoodPop has already agreed to expand that search to all custodians. Ex. 6 at 1 (8/20 Buratti email). Expanding that search again to include terms that are so common to everyday parlance as "Google" will vastly and unproductively expand the universe of documents for review, especially considering that JonnyPops believes they have already received too many documents on this front.

***Counterclaim Products.*** Despite JonnyPops' claim, before it filed its Motion, GoodPop had already agreed to run search terms across all custodians and adapt them "to include the other products addressed in [JonnyPops'] amended counterclaims." Dkt. 76 at 3-4; *see* Ex. 6 at 1 (8/20 Buratti email). Furthermore, GoodPop has already run marketing-related searches concerning JonnyPops' Counterclaim products. *See* Ex. 11 at Ex. A. This issue is not ripe.

JonnyPops first raised this issue on August 18, asking GoodPop: to confirm its "position on running these terms against the files of all of your custodians," and also "confirm whether you agree to adapt them to include the other products addressed in our amended counterclaims." Ex. 6 at 2 (8/18 Friedman email). GoodPop replied just over 48 hours later, agreeing: "GoodPop agrees to run these terms against the files of all of our custodians, and to adapt them to include the other products addressed in your amended counterclaims." *Id.* at 1 (8/20 Buratti email).

JonnyPops nonetheless filed this Motion. Looking to manufacture a dispute, JonnyPops dismisses GoodPop's agreement as "an eleventh-hour offer just before filing." Dkt. 76 at 8 n.3. (GoodPop had no idea that JonnyPops intended to file this Motion. *See supra*, Section I.C.) JonnyPops asserts it needed to move *notwithstanding that agreement* "because GoodPop has not explained how it will 'adapt' the terms or shared the specific terms it intends to run." *Id.* But

JonnyPops did not ask those questions before filing its surprise Motion. *See supra*, Section I.C. Furthermore, GoodPop has repeatedly asked JonnyPops to identify its complete list of Counterclaim products, and JonnyPops has never done so.

JonnyPops' own refusal to run similar search terms stands in stark contrast: even now, after the entry of the Court's July 18 Order, JonnyPops' own searches do not name or otherwise identify ***ANY of the products at issue in GoodPop's Complaint*, and JonnyPops has declined to add those search terms**. Ex. 14 at 25, 28 (Friedman 8/4 and 7/30 emails).

***Market Share.*** Before JonnyPops filed its Motion, GoodPop had already agreed to JonnyPops' demand that it run the search term "market share" and produce additional documents. Ex. 7. This issue is not only moot, but JonnyPops' argument is misleading. From the outset, GoodPop transparently communicated that it would produce documents "sufficient to show" its market share, and it did so. Ex. 15 at 9 (RFP 15 Resp.). JonnyPops contends that GoodPop "fail[ed] to include any search terms that would yield responsive documents" concerning market share, but GoodPop's prior productions include at least 216 documents (including families) that hit on this term: documents "sufficient to show" market share have been produced.

From the outset of this case, GoodPop clearly and transparently communicated to JonnyPops that it would collect and product documents "sufficient to show" its market share, and it did so. JonnyPops has not identified any actual dispute or deficiency. There is nothing to compel.

## III.    CONCLUSION

For these reasons, GoodPop respectfully requests that the Court deny JonnyPops' Motion.

Dated: August 27, 2025

Respectfully submitted,

*/s/ Leah Bhimani Buratti*
Leah Bhimani Buratti

**BOTKIN CHIARELLO CALAF PLLC**
Leah Bhimani Buratti, TX Bar No. 24064897
leah@bccaustin.com
Kayna Stavast Levy, TX Bar. No. 24079388
kayna@bccaustin.com
1209 Nueces Street
Austin, TX 78701
Telephone: (512) 615-2341

**HUESTON HENNIGAN LLP**
John C. Hueston, CA State Bar No. 164921
jhueston@hueston.com
(*pro hac vice*)
Sourabh Mishra, CA State Bar No. 305185
smishra@hueston.com
(*pro hac vice*)
Christine M. Woodin, TX Bar No. 24100051
cwoodin@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this the 27th day of August 2025, I served a true and correct copy of this document upon counsel of record via email.

                                         */s/ Leah Bhimani Buratti*
                                         Leah Bhimani Buratti