# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **AUSTIN'S NATURAL FROZEN POPS,** | § | |
| **INC, d/b/a GOODPOP** | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **Case No. 1:24-cv-00716-RP** |
| | § | |
| **JONNY POPS, LLC** | § | |
| *Defendant.* | § | |

## PLAINTIFF GOODPOP'S MOTION TO COMPEL DEFENDANT JONNY POPS TO PRODUCE DOCUMENTS RESPONSIVE TO PLAINTIFF'S THIRD AND FOURTH REQUESTS FOR PRODUCTION, AND SECOND AND THIRD INTERROGATORIES


**TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................... i
    I.    BACKGROUND ............................................................................................. 1
    II.    LEGAL STANDARD ..................................................................................... 1
    III.    ARGUMENT .................................................................................................. 2
    IV.    CONCLUSION ............................................................................................... 9
CERTIFICATE OF SERVICE ............................................................................................... 10

Plaintiff Austin's Natural Frozen Pops, Inc., d/b/a GoodPop (GoodPop) finds itself with no choice but to come before the Court once more to compel JonnyPops to comply with its discovery obligations. GoodPop has been before the Court before on its Motion to Compel JonnyPops to Produce Documents Responsive to Its First and Second Requests for Production (Dkt. 39), but since then, the parties have reached impasse as to later-served discovery: GoodPop's Third and Fourth Requests for Production ("RFPs") and First, Second, and Third Interrogatories. As the September 10th close of fact-discovery deadline approaches, GoodPop now respectfully requests that the Court compel JonnyPops to produce documents responsive to GoodPop's RFPs 61, 63–69, 71-72, and 74 and supplement its responses to Interrogatories 15-18.

## I.   BACKGROUND

As the Court well knows, GoodPop and JonnyPops are competitors in the "better-for-you" frozen treat market. JonnyPops has attempted to capitalize on GoodPop's success by launching products that bear a remarkable resemblance to GoodPop's. However, JonnyPops formulates and markets its copycat products using deceptive practices such as including images of fruit on its packing that the products do not contain and manipulating the information on its nutrition facts panels. In so doing, JonnyPops has misled consumers and retailers, and harmed GoodPop's market position. GoodPop asserts claims under the Lanham Act and California's Unfair Competition Law (UCL). Dkt. 1 at 25-28. Each of the RFPs and Interrogatories subject to this Motion to Compel seek evidence concerning essential elements of GoodPop's Lanham Act and UCL claims, yet JonnyPops has refused to produce responsive documents, and respond or appropriately supplement its existing interrogatory responses.

## II.   LEGAL STANDARD

The scope of discovery is broad. *Crosby v. La. Health Serv.*, 647 F.3d 258, 262 (5th Cir. 2011). Rule 26 allows discovery regarding any relevant, nonprivileged matter proportional to the

1

needs of the case. Fed. R. Civ. P. 26(b)(1). A request is relevant when it "seeks admissible evidence or is reasonably calculated to lead to the discovery of admissible evidence." *Hurdsman v. Gleason*, No. 1:22-CV-254-RP, 2024 WL 2848674, at *3 (W.D. Tex. June 5, 2024) (Pitman, J.).

A party seeking discovery can move to compel upon a failure to produce documents. Fed. R. Civ. P. 37(a)(3)-(4). In the face of such a motion, "the party resisting discovery must show specifically how each [request] is not relevant or how each [request] is overly broad, burdensome, or oppressive." *McLeod, Alexander, Powel and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (cleaned up). Likewise, "the burden of showing that a discovery request fails the proportionality calculation mandated by Rule 26(b) falls on the party resisting discovery." *League of United Latin Am. Citizens v. Abbott*, EP-21-CV-00259-DC, 2022 WL 3593055, at *4 (W.D. Tex. Aug. 22, 2022) (cleaned up).

### III. ARGUMENT

#### A. The Discovery Requests at Issue

The discovery requests at issue concern (1) the actual nutritional content of JonnyPops' products at issue; (2) financial information for damages purposes; and (3) the marketing and promotion of the JonnyPops' products at issue. These requests are essential to GoodPop's ability to prove its claims and defend against JonnyPop's counterclaims. *See* Fed. R. Civ. P. 26(b)(1) ("[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.).

#### 1. *JonnyPops' false or misleading statements*

The first group of discovery requests, covering the nutritional content of the JonnyPops'

products at issue, include RFPs 61, 63, 67-69 and Interrogatory 16. Ex.1 at 9-10; Ex. 4 at 6 .[1]

These requests concern whether JonnyPops made "specific and measurable claim[s], capable of being proved false or of being reasonably interpreted as a statement of objective fact" and can be proven via evidence "that the commercial advertisement or promotion is either literally false, or that [if the advertisement is not literally false,] it is likely to mislead and confuse consumers." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000) (citation omitted). "[A] statement of fact is one that (1) admits of being adjudged true or false in a way that (2) admits of empirical verification." *Id*. (citation omitted).

RFPs 61, 63, 67-69 and Interrogatory 16 are specifically relevant to GoodPop's claims that the products at issue are not actually made of fruit, that JonnyPops uses fruit or fruit-based ingredients in small amounts, or that JonnyPops' products are loaded with added sugar—although the products' packaging leads consumers to believe otherwise. Dkt. 1 at 3-6. For example, JonnyPops misleads customers about the amount of sugar in its products by manipulating serving size information. JonnyPops' nutrition panel states a serving size that is roughly a third of the amount required—56 grams (or 1.97oz) instead of the FDA-mandated 2/3 cup (equal to 5.33 fl oz). *Id*. at 22.

| Ice cream, frozen yogurt, sherbet, frozen flavored and sweetened ice and pops, frozen fruit juices: all types bulk and novelties (e.g., bars, sandwiches, cones, cups) | $2/3$ cup—includes the volume for coatings and wafers | $2/3$ cup (_ g), _ piece(s) (_ g) for individually wrapped or packaged products |
|---|---|---|

21 CFR § 101.12, Table 2.

---

[1] These RFPs seek nutrition facts panel information, serving size information, documents analyzing different sweeteners, documents analyzing and identifying the amounts of fruit-based ingredients in JonnyPops' products. Ex. 1 at 9-10. Interrogatory 16 asks JonnyPops to describe the reasons for decisions it made about the serving size listed on its products. Ex. 4 at 6.

3



Ex. 9. This has the misleading effect of making the sugar content of a JonnyPops' pop look lower than that of other pop manufacturers who follow the FDA's labelling requirements. Information regarding this specific issue is sought by RFP 63 and Interrogatory 16. Ex. 1 at 9; Ex. 4 at 6.

RFP 67, seeking documents analyzing the differences between sucrose, glucose, fructose, and other added sugars, is related not only to GoodPop's added sugar claims but also to its defense against JonnyPops' counterclaims about GoodPop's alleged use of refined sugars. Dkt. 38 at 33.

### 2. The parties' damages

The next group of discovery requests, related to damages, includes RFPs 64-65, 74, and Interrogatories 15 and 18. Ex. 1 at 9; Ex. 2 at 9; Ex. 4 at 6; Ex. 5 at 7.[2] Each of these requests goes to whether GoodPop has been or is likely to be injured by JonnyPops' false and misleading statements, and to what extent, and GoodPop's claim that JonnyPops' false advertising practices caused GoodPop to lose shelf space, market share, consumers, and sales. Dkt. 1 at 24-25.

### 3. JonnyPops' misleading marketing and promotion of the accused products

The last group of discovery requests, covering JonnyPops' marketing and promotion of its products at issue includes RFPs 66, 71-72, and Interrogatory 17. Ex. 1 at 10; Ex. 2 at 9; Ex. 4 at

---

[2] RFPs 64-65, and 74 request documents related to JonnyPops' sales brokers, sales of its products, contracts for the sale and distribution of its products. Ex. 1 at 9; Ex. 2 at 9. Interrogatories 15 and 18 request JonnyPops to identify its sales brokers and disclose revenues, units sold, and costs of goods among other categories of financial data. Ex. 5 at 6.

4

6.[3] Each of these requests is relevant to whether JonnyPops' false/misleading statements deceived consumers, along with "evidence of the statement's impact on consumers." *Pizza Hut*, 227 F.3d at 495. They also directly relate to GoodPop's claim that JonnyPops induced and/or caused third parties to engage in false advertising by repeating JonnyPops' false statements.[4] Dkt. 1 at 25. These requests are of particular importance because their results will serve as inputs for GoodPop's expert evaluation of consumer reactions to JonnyPops' statements. *See Pizza Hut*, 227 F.3d at 503 n.13 (identifying the key question as "what does the person to whom the advertisement is addressed find to be the message").

Relatedly, GoodPop has also requested that JonnyPops collect documents from Jake Achterhoff, JonnyPops' Marketing Lead from February 2016 through September 2019, including during the time when JonnyPops was launching its ice pop / water pop products and designing and launching marketing campaigns for those products.

### B. JonnyPops Must Produce Responsive Documents and Supplement its Answers to GoodPop's Discovery Requests

JonnyPops generally objected to these requests with boilerplate responses, but later agreed to respond or investigate the burden of responding after meeting and conferring. As of the filing of this motion, JonnyPops has largely failed to respond, supplement its responses, or explain the purported burden. Instead, it has advanced stale reciprocity arguments, ignored follow-up inquiries, and blown past agreed deadlines to respond. With the deadline for substantial completion

---

[3] RFPs 66 and 71-72 request documents related to influencer marketing, social media marketing, and Google Ads. Ex. 1 at 10; Ex. 2 at 9. Interrogatory 17 asks JonnyPops to identify influencers and marketing agencies with whom it has collaborated. Ex. 4 at 6.

[4] GoodPop's Complaint describes "a nutritionist with more than 1 million followers" who recommended JonnyPops' popsicles as a healthy alternative in post warning about the dangers of excess sugar. GoodPop concludes "[if] a certified nutritionist can be misled, certainly the average consumer will be." Dkt. 1, at 22. Based on this pleading, GoodPop is entitled to know whether this nutritionist-influencer and others have been induced to engage in false advertising.

of document discovery just a week away, GoodPop cannot continue to wait indefinitely.

> 1. ***RFPs 61 and 63-69: JonnyPops fails to produce documents, changes its objections, falls back to reciprocity***

JonnyPops' written objections to RFPs 61 and 63-69 are generally based on overbreadth, burden, relevance, proportionality and, for all but RFP 63, redundance to GoodPops' First and Second RFPs. Ex 10 at 5-8. During a July 15 meet and confer, JonnyPops argued that the information requested by these RFPs should have already been produced because the documents sought were covered by searches conducted in response to GoodPop's First and Second RFPs. Ex. 8 at 3. It raised no other objections. After GoodPop noted that, in fact, responsive documents had not been produced, JonnyPops agreed to investigate whether RFPs 61 and 63-69 covered new materials and would require new searches, and to create and share a chart demonstrating the alleged overlap between RFPs 61 and 63-69 and other GoodPop RFPs. *Id.*

JonnyPops changed its tune after two weeks, dredging up its reciprocity arguments and only agreeing "to conduct a reasonable search for documents responsive [to these requests], so long as GoodPop agrees to reciprocal production in response to our mirroring requests." *Id.* at 2. As GoodPop noted in light of JonnyPops' sudden about face, its responses to those "mirroring requests" were not due for another three weeks, and more importantly, "the parties [had] been down this road before" and "JonnyPops [could not] refuse to produce documents based on its demand for reciprocity agreements." *Id.* at 1-2. GoodPop stated its position that "JonnyPops' blanket refusal to produce documents in response to GoodPop's 3rd RFPs absent reciprocity fails to comport with JonnyPops' basic Rule 26 obligations." *Id*.

This Court should once again reject JonnyPop's reciprocity argument. During the July 18 hearing on GoodPop's First Motion to Compel, JonnyPops argued that because the parties' claims are "mirror images" of each other "whatever discovery […] we're giving to them, they oughta

provide discovery to us." Ex. 11 at 22:10-11. The Court responded that "the only thing [it] can do is rule on the motions that are pending in front of [it…]." *Id.* at 35:10-17. JonnyPops may not withhold documents based on its baseless assertion that it is first entitled to responses to its own later-propounded discovery.

To the extent JonnyPops is relying on their written objections, they should be overruled because JonnyPops has not asserted them with any specificity. *T.S. ex rel. P.O. v. Burke Found.*, No. 1:19-CV-809-RP, 2021 WL 3924796, at *1 (W.D. Tex. June 29, 2021 (Pitman, J.) (The "party resisting discovery has the burden to 'specifically object,'" and "boilerplate and unsupported objections to discovery requests that fail to state their grounds are improper and result in waiver of those objections."). JonnyPops prior objections seem to have been dropped since (i) it did not raise them on the meet and confer and (ii) it has no problem supplying the requested discovery so long as GoodPop does too. But to the extent JonnyPops relies on its prior written objections, those should be denied given their boilerplate nature.

### 2. *RFPs 71-72 and 74 and Interrogatories 15-17: JonnyPops fails to honor the agreements it made during the parties' meet and confers*

JonnyPops objected to RFPs 71-72 and 74 based on overbreadth, burden, relevance, and proportionality but agreed to meet and confer as to the scope of its production, if any. Ex. 12 at 5-7. The parties met and conferred on these RFPs on August 19. Ex. 7 at 9. During that conference GoodPop explained the relevance of these requests and agreed to narrow RFPs 71-72; in return, JonnyPops agreed to investigate and report back by August 27 about whether it would produce responsive documents (including to RFP 74), but missed that deadline. *Id.*[5]

---

[5] For RFP 71, GoodPop agreed to limit its request to the products at issue and to social media posts concerning "better-for-you" claims, as defined in GoodPop's Fourth RFPs. Ex. 7 at 9; Ex. 2 at 2. For RFP 72, GoodPop agreed to limit its request to Google AdWord campaigns for the specific advertising claims and campaigns at issue. Ex. 7 at 9.

7

As for Interrogatories 15-17, JonnyPops objected on the basis of overbreadth and burden but agreed to meet and confer as to the scope for RFPs 15-16 and stated it would not respond to RFP 17. Ex. 14 at 5-6. During the parties' July 15 meet and confer GoodPop explained the relevance of each of these Interrogatories and JonnyPops' counsel agreed to confer with its client by July 25 or July 29 at the latest about whether it would respond and the scope of its responses to these requests. Ex. 8 at 3.[6] On August 1, JonnyPops confirmed that it would respond to these Interrogatories "this coming week" [the week of August 4]." *Id.* at 2. That week came and went, and still, JonnyPops did not and has not responded to these Interrogatories.

There is no reason for JonnyPop's continued failure to uphold its end of its agreement with GoodPop. To the extent JonnyPops' overbreadth, burden, relevance, proportionality objections still stand, these objections should be overruled. *Supra,* Section B.1. GoodPop narrowed its requests as part of the meet and confer process based on JonnyPop's representation that it would produce documents and respond. Short of continuing to send follow-up inquiries into the void, there is nothing else GoodPop can do to try to compel these already-agreed upon documents and responses, necessitating the Court's intervention.

### 3. RFP 18: JonnyPops must amend its deficient interrogatory response

For Interrogatory 18, GoodPop elicited an agreement from JonnyPops to supplement its response which initially referenced just two documents. Ex. 7 at 9. JonnyPops only committed to supplement its response by referencing documents in response to GoodPop's RFP 44. *Id.* But as explained by GoodPop during the meet and confer and in follow up emails, Interrogatory 18 is broader than RFP 44 and "just citing to its RFP 44 financials would not be sufficient." *Id.*; Ex. 6 at 4-5; *Compare* Ex. 5 at 7 (Interrogatory 18) *with* Ex. 13 at 14 (RFP 44). JonnyPops has still not

---

[6] GoodPop agreed to narrow Interrogatory 17 to influencers and marketing agencies JonnyPops had actually hired and collaborated with, as opposed to communicated with. Ex. 8 at 3.

8

agreed to update its response to Interrogatory 18 to fully provide the information requested. Interrogatory responses demand "a candid statement of the information sought or of the fact that objection is made to furnishing the information." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 579 (N.D. Tex. 2018) (citation omitted). Rule 33 thus requires that the answering party "pull together a verified answer by reviewing all sources of responsive information reasonably available to him and providing the responsive, relevant facts." *Id.* JonnyPops' planned response to Interrogatory 18 fails that test and so, it must ask the Court compel JonnyPops to fully supplement its response.

### 4. *JonnyPops must identify and collect documents from Jake Achterhoff*

As stated above, GoodPop requested that JonnyPops identify, collect, and produce documents from Jake Achterhoff, JonnyPops' Marketing Lead from February 2016 through September 2019. It appears JonnyPops has not produced documents from any marketing professional from February 2016 through January 2019. During the parties' August 15 meet and confer, GoodPop raised the issue of Achterhoff's files and JonnyPops agreed to confirm by August 18 whether it would collect and produce his documents. Ex. 7 at 8. JonnyPops never followed through. Because JonnyPops must identify and collect from the custodians "most likely to possess responsive information" it must identify and collect documents from Achterhoff who is likely to have responsive information related to at least GoodPop's claims and corresponding discovery requests covering JonnyPops' marketing strategies for the products at issue. *Entergy Gulf States Louisiana, L.L.C. v. Louisiana Generating, L.L.C.*, No. CV 14-385-SDD-RLB, 2021 WL 24686, at *7 (M.D. La. Jan. 4, 2021). Accordingly, GoodPop moves the Court to compel JonnyPops to collect, search, and produce responsive documents from Achterhoff.

## IV. CONCLUSION

JonnyPops has refused to produce documents in response to GoodPop's discovery without any valid justification. Its objections and delay tactics are untenable and meritless. JonnyPops

9

should be compelled to produce documents responsive to GoodPop's RFPs 61, 63-69, 71-72, and 74 and substantively supplement its responses to Interrogatories 15-18.

Dated: September 2, 2025

Respectfully submitted,

*/s/ Leah Bhimani Buratti*
Leah Bhimani Buratti
**BOTKIN CHIARELLO CALAF PLLC**
Leah Bhimani Buratti
TX Bar No. 24064897
leah@bccaustin.com
1209 Nueces Street
Austin, TX 78701
Telephone: (512) 615-2341

**HUESTON HENNIGAN LLP**
John C. Hueston, CA State Bar No. 164921
jhueston@hueston.com
(*pro hac vice*)
Sourabh Mishra, CA State Bar No. 305185
smishra@hueston.com
(*pro hac vice*)
Christine M. Woodin, TX Bar No. 24100051
cwoodin@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2025 a true and correct copy of the foregoing document has been filed via the court's ECF system which will send notifications to all counsel of record.

*/s/ Leah Bhimani Buratti*
Leah Bhimani Buratti