UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **AUSTIN'S NATURAL FROZEN POPS, INC., d/b/a GOODPOP,** *Plaintiff* | § § § § |
| v. | §   No.  1:24-CV-00716-RP § |
| **JONNY POPS, LLC,** *Defendant* | § § § |

**ORDER**

Before the Court is Defendant Jonny Pops, LLC's ("Jonny Pops") motion to compel Plaintiff Austin's Natural Frozen Pops, Inc., d/b/a GoodPop's ("GoodPop") consumer survey and related materials, Dkt. 42, and all related briefing. After reviewing the filings and relevant law and conducting a hearing, Dkt. 89, the Court denies the motion.

**I.     BACKGROUND**

This is a false-advertising suit. *See* Dkt. 1. GoodPop and Jonny Pops both sell frozen treats. *Id.* GoodPop generally alleges that after seeing GoodPop's success as a producer of "better-for-you" treats, Jonny Pops "cop[ied] GoodPop's brand positioning and products." *Id.* at 9, 10. GoodPop alleges that in spite of Jonny Pops' representations that it sells products that consumers "can feel good about," Jonny Pops' products contain less juice and more sugar than GoodPop's. *Id.* at 10-11.

In support of its claims, GoodPop conducted a survey of household grocery shoppers that it argues demonstrates that consumers "have been misled" by Jonny

1

Pops' representations. *Id.* at 5. Jonny Pops moved to compel GoodPop to produce "(i) all documents related to the survey cited in the Complaint [and] (ii) a privilege log identifying each document over which GoodPop asserts a claim of privilege and the basis for that claim of privilege[.]" Dkt. 42, at 11.[1] Jonny Pops states that the survey materials are both discoverable as "directly probative of GoodPop's claims" and not privileged. *Id.* at 7. Jonny Pops argues that to the extent any of the documents it seeks were privileged, GoodPop has waived that privilege by relying on the survey in its complaint. *Id.* at 8.

In its response, GoodPop emphasizes that Jonny Pops already received copies of the survey and its responses, and that Jonny Pops now seeks "secondary" documents involving communications related to the survey's design, administration, or results. Dkt. 46, at 8. GoodPop contends that because it conducted the survey in preparation for this litigation and under the direction of its counsel, the documents and communications about the survey's development, administration, or results are "squarely covered by work product privilege" and communications between GoodPop and its counsel are protected by attorney-client privilege. *Id.* at 8-9. GoodPop also states that Jonny Pops' demand encompasses documents "far beyond" what GoodPop placed at issue in its complaint. *Id.* at 9.

After an initial hearing, the Court directed GoodPop to file and serve on Jonny Pops "a privilege log detailing responsive documents it is withholding" on the basis of

---

[1] Jonny Pops also sought "(iii) updated disclosures and interrogatory responses that identify all persons with knowledge of the survey." Dkt. 42, at 11. In its response, GoodPop agreed to Jonny Pops' request, rendering the issue moot. Dkt. 46, at 8.

2

any privilege. Dkt. 65, at 2. The Court also ordered GoodPop to submit the documents to the Court for *in camera* review. *Id.* After reviewing the documents, the Court set the motion for a hearing. Dkt. 82. At the hearing, GoodPop argued that its complaint relies on the survey, not the underlying communications Jonny Pops seeks in its motion. Dkt. 89. GoodPop stated that Jonny Pops will still be able to challenge the survey at trial by calling a GoodPop employee to the stand and that it withholds only privileged attorney work. *Id.* Jonny Pops responded that it could not know the "complete story" or properly prepare for trial without receiving the documents. *Id.*

## II.  DISCUSSION

Discovery is outside the scope permitted by the Federal Rules of Civil Procedure if the discovery sought is (1) privileged; (2) not relevant to any party's claims or defense; or (3) not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Matters relating to discovery are committed to the discretion of the trial court[.]" *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 347 (5th Cir. 2004).

### A.   The documents Jonny Pops seeks are privileged.

The attorney-client privilege "exists to 'encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Doe 1 v. Baylor Univ.*, 320 F.R.D. 430, 435 (W.D. Tex. 2017) [hereinafter "*Baylor I*"] (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "For a communication to be protected under the privilege, the proponent 'must prove: (1) that he made

3

a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.'" *EEOC v. BDO USA, LLP*, 876 F.3d 690, 695 (5th Cir. 2017) (quoting *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)).

The work-product doctrine applies to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). "The work product doctrine focuses only on materials assembled and brought into being in anticipation of litigation." *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982). The doctrine does not place work product outside the scope of discovery, but instead "creates a form of qualified immunity from discovery" for materials prepared in anticipation of litigation. *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 514 n.2 (5th Cir. 1993). For both attorney-client privilege and work-product doctrine, the party asserting a privilege exemption from discovery must demonstrate its applicability. *See* Fed. R. Civ. P. 26(b)(5); *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001); *In re Grand Jury Proceedings*, 43 F.3d 966, 970 (5th Cir. 1994) (citing *Hickman v. Taylor*, 329 U.S. 495, 512 (1947)).

After reviewing GoodPop's documents *in camera*, the Court concludes that each of the documents is privileged. Therefore, GoodPop must only produce the documents if it has waived privilege with respect to them. As discussed below, the Court finds that GoodPop has not waived privilege with respect to the documents.

### B. GoodPop has not waived privilege with respect to the documents Jonny Pops seeks.

Jonny Pops primarily argues that GoodPop has waived privilege with respect to the survey materials because GoodPop has placed the materials "at issue" in the case. *See* Dkt. 42, at 8.[2] GoodPop responds that it has not waived privilege with respect to the "secondary" documents Jonny Pops seeks because GoodPop's claim relies on the survey and its results—not counsel's advice—to support its claims and because GoodPop "does not intend to prove its claim using the privileged advice, communications, and work product." Dkt. 46, at 10.

A party waives attorney-client privilege by disclosing attorney-client communications to third parties or "by affirmatively relying on attorney-client communications to support an element of a legal claim or defense." *In re Itron, Inc.*, 883 F.3d 553, 558 (5th Cir. 2018); *see also Sw. Marine & Gen. Ins. Co. v. Nat'l Credit Union Admin. Bd.*, No. AU-17-CA-00367-SS, 2018 WL 6313294, at *2 (W.D. Tex. Nov. 30, 2018). A party waives work-product privilege as to certain subject matter in "instances where the quality and substance of an attorney's work product have been directly placed at issue in the litigation by the party asserting the privilege." *Baylor I*, 320 F.R.D. at 442. Jonny Pops argues that GoodPop waived work-product and attorney-client protection over subject matter related to the survey. *See* Dkt. 42; *Doe*,

---

[2] Attorney-client privilege is waived if a confidential communication has been disclosed to a third party, unless the communication is made to further a common legal interest. *In re Santa Fe*, 272 F.3d at 711-12. Jonny Pops does not argue that GoodPop has waived privilege on these grounds.

5

320 F.R.D. at 442. Therefore, the issue is whether GoodPop placed the materials Jonny Pops seeks "at issue" in the litigation. *See Doe*, 320 F.R.D. at 442.

The "at-issue" waiver applies in a relatively narrow set of circumstances. For example, in *Baylor I*, Baylor University ("Baylor") hired an outside law firm called Pepper Hamilton "to conduct an independent external review" of certain institutional policies and responses. *Doe*, 320 F.R.D. at 434. The plaintiffs sought production of materials provided to and produced by Pepper Hamilton in connection with the investigation in "anticipation of litigation." *Id.* at 434, 441. The Court noted that Baylor "impliedly connected" the investigation to the litigation, referencing a filing in which Baylor concluded its summary of actions the university had taken to prevent sexual assault with a reference to the Pepper Hamilton investigation. *Id.* at 442. However, the Court concluded that Baylor had not "directly invoked Pepper Hamilton's work as a defense," pointing out that Baylor's answer "include[d] no reference to the investigation." *Id.*

Later in that same case, Baylor began "repeatedly" invoking the investigation. *Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 485-86 (W.D. Tex. 2020) [hereinafter "*Baylor II*"]. The Court found that in contrast to the earlier stage, Baylor had "specifically point[ed] to the Pepper Hamilton investigation and implementation work to assert that Baylor was not deliberately indifferent or intentionally discriminatory[.]" *Id.* at 491. That is, Baylor repeatedly pointed to the investigation itself in order to "negate liability or support a defensive claim." *Id.* at 492. The Court noted that because Baylor planned to rely on information gleaned in the investigation, plaintiff would need to

"question[] the integrity, scope and conduct of the investigation[.]" *Id.* at 493. The Court ultimately held that because Baylor could not "separate its investigation and reform efforts from Pepper Hamilton's, Baylor's proposed defensive case explicitly relies on Pepper Hamilton's work product," supporting a finding of waiver. *Id.*

As in *Baylor II*, GoodPop relies on the survey and its results in its complaint. *See, e.g.*, Dkt. 1, at 5 (arguing that the survey shows that "nearly half of respondents believed that Jonny Pops's 'Fruit Stacks' are primarily made of fruit"); 16 (same); 18 (noting that "61% of survey respondents believed that the majority of sugar in the [Fruit Stacks] product came from fruit"); 22 (listing survey results that GoodPop contends demonstrate "the effect of Jonny Pops's false and misleading marketing"); 22-23 (stating that the survey supports the conclusion that Jonny Pops' representations on its packaging "are material to consumer decisions"). GoodPop intends to rely on the results from the survey to prove an element of its false-advertising claim: that Jonny Pops' allegedly false or misleading statement "either deceived or had the capacity to deceive a substantial segment of potential customers." *See IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002) (setting out the elements of a false-advertising claim under the Lanham Act). GoodPop agrees that because it relies on the survey and its results throughout the complaint, it was required to produce the survey and its results—which it did. Dkt. 46, at 11. The Court concludes, as GoodPop seems to agree, that GoodPop has waived privilege with respect to the survey and its results by placing those items "at issue." *See id.*

7

GoodPop's opposition to the production requested in this motion instead hinges on GoodPop's distinction between the survey and its results on one hand and *communications related to* the survey and its results on the other hand. *See* Dkt. 46, at 10. The Court agrees that GoodPop does not rely on communications related to the survey to support a claim or defense here. *See Itron*, 883 F.3d at 561 (stating that for waiver to occur, the client "must *rely* on privileged advice from his counsel to make his claim or defense" (internal quotation marks omitted)). While GoodPop cites the survey repeatedly in its complaint, it does not cite any communications from counsel regarding the survey. *See* Dkt. 1. Nor are counsel's communications regarding the survey necessary for GoodPop to make the argument that Jonny Pops' representations deceived or had capacity to deceive consumers. *See id.* at 26. As the court held in *Baylor II*, "[t]he scope of an 'at issue' waiver depends on the facts of the case, and what has been put 'at issue.'" *Baylor II*, 335 F.R.D. at 497. Counsel's communications have not been put "at issue" here. *See Itron*, 883. F.3d at 561 (citing *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994) (finding that in cases involving waiver, the client "has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue" and listing cases)).

True, the scope of a waiver "extends also to the material on that subject matter necessary to litigate the issue fairly." *Id.* at 499. Jonny Pops argues that GoodPop "made the survey and its analysis of the survey's results central to its claims." Dkt.

8

42, at 9. But since GoodPop has already produced the survey and its results, Jonny Pops may challenge GoodPop's analysis of the survey on the basis of those materials.

Jonny Pops could also argue that the jury needs to know details about the survey's development and methodology. As in *Baylor II*, it would be unfair for GoodPop to rely on the results of the survey to assert that the representations deceived or had the capacity to deceive yet deprive Jonny Pops of the opportunity to understand how the survey was formed and carried out. *See* 335 F.R.D. at 498 (concluding that plaintiff was entitled to "information that Pepper Hamilton conveyed to the Regents" regarding the investigation), 500 (requiring Baylor to produce work product including attorney outlines or notes used to create presentations to the Baylor regents, which the regents used heavily in deciding to adopt the proposed reforms). But unlike in *Baylor II*, where the regents' knowledge of Baylor's policies and responses was largely based on information that Pepper Hamilton had uncovered and reported to the regents, here, GoodPop employees may testify as to the survey's development and methodology based on their own knowledge. *See Baylor* II, 335 F.R.D. at 481-82. Additionally, Baylor "intend[ed] to rely on the *fact that it conducted an investigation* and the fact that it implemented reforms" to support its case. *Id.* at 495 (emphasis added). Here, GoodPop does not rely on the fact that it conducted the survey to support its claims—rather, it relies on the survey's results.

Ultimately, this is not an "instance[] where the quality and substance of an attorney's work product have been directly placed at issue in the litigation by the

9

party asserting the privilege." *Baylor I*, 320 F.R.D. at 442. The Court will therefore deny Jonny Pops' motion to compel.

### III.   CONCLUSION

Based on the foregoing discussion, the Court **ORDERS** that Jonny Pops' motion to compel, Dkt. 42, is denied.

The referral of this case to the Magistrate Judge should now be canceled.

SIGNED September 15, 2025.

　　　　　　　　　　　　　　　　　　　　　
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE