IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| AUSTIN'S NATURAL FROZEN POPS, INC., *d/b/a* GOODPOP, | § § § | |
| Plaintiff/Counter-Defendant, | § § | |
| v. | § § | 1:24-CV-716-RP |
| JONNY POPS, LLC, | § § | |
| Defendant/Counter-Plaintiff. | § § | |

## ORDER

Before the Court is Plaintiff/Counter-Defendant Austin's Natural Frozen Pops, Inc. d/b/a GoodPop's ("GoodPop") Motion to Dismiss Defendant/Counter-Plaintiff Jonny Pops, LLC's ("JonnyPops") Amended Counterclaims. (Mot. to Dismiss Counterclaims, Dkt. 44). Having considered the parties' briefs, the evidence, and the relevant law, the Court will grant in part and deny in part the motion to dismiss the counterclaims.

## I. BACKGROUND

JonnyPops and GoodPop are competitors in the market of "ice pops." (Am. Counterclaims, Dkt. 37, at 18, 27). GoodPop initiated the instant action against JonnyPops, alleging violations of the Lanham Act for false advertising, as well as violations of California's unfair competition law. (Compl., Dkt. 1, at 25–27). JonnyPops then filed counterclaims against GoodPop under the Lanham Act for false advertising and under California's false advertising and unfair competition laws. (Am. Counterclaims, Dkt. 37, at 49–52). JonnyPops pleads that GoodPop's lawsuit is "hypocr[tical]," asserting that GoodPop has "routinely engaged in the conduct of which it accuses JonnyPops." (*Id.* at 18). It claims that GoodPop has "duped consumers into thinking that its products are nutritionally superior to other ice pops, including JonnyPops's products." (*Id.* at 25).

1

JonnyPops points to a number of allegedly false or misleading statements, which JonnyPops categorizes into six categories.

First, JonnyPops pleads that GoodPop has made multiple false or misleading statements about its products not containing refined sugars. JonnyPops alleges that GoodPop's website stated[1] that "[i]f it's a GoodPop, it'll never have . . . refined sugars." (*Id.* at 33). JonnyPops also includes examples of GoodPop product packaging, such as that seen below, with very similar language—"If it's a GoodPop, it'll never have . . . Refined Sugar." (*Id.* at 35–38).



JonnyPops pleads that many of GoodPop's products[2] "contain cane sugar, which is always refined to some extent." (*Id.* at 33). It cites to definitions of "raw sugar," "sugar," and "cane sugar," as well as webpages about refined sugar and sugar refining/processing, in support of this claim. (*Id.* at 33 n.9). JonnyPops pleads that a significant number of consumers have seen GoodPop's claim that their products will never contain refined sugar. (*Id.* at 38). It references four consumer reviews that it

---

[1] Though the specific webpage cited by JonnyPops no longer exists on GoodPop's website, JonnyPops attached a screen capture of the webpage to its Amended Counterclaims. (GoodPop's "About" Webpage, Dkt. 37-1, at 2).

[2] As examples of GoodPop products that contain cane sugar, JonnyPops points to products such as the Disney Mickey Mouse Fudge n' Vanilla Pop, the Neapolitan Pop, the Orange n' Cream Pop, and the Strawberry Lemonade Pop. (Id. at 33–34).

claims support its assertion that consumers believe this statement that GoodPop products never have refined sugars and buy GoodPop products for that reason. (*Id.* at 38–39).

Second, JonnyPops pleads that GoodPop's website makes the false or misleading statement, "The fruit in GoodPops is real and really good! We use real, whole fruits, juices and purees." (*Id.* at 39). According to JonnyPops, this statement is false or misleading because (1) certain GoodPops do not contain any fruit, and (2) some GoodPops that do contain fruit ingredients are made with fruit-juice concentrates and other additives, rather than "whole fruit, juices or purees." (*Id.* at 39–40). JonnyPops alleges that consumers believe this false or misleading claim and buy GoodPop products for that reason. (*Id.* at 40–41). It quotes seven online consumer reviews that mention GoodPops containing 100% fruit juice. (*Id.*).

Third, JonnyPops alleges that GoodPop uses images of children eating its products to give consumers the misleading impression that its products are healthy for children. (*Id.* at 41). It claims that these images are "routinely" of GoodPop's "most sugary products," including ones that contain up to twelve grams of added sugar. (*Id.* at 41–42). JonnyPops cites as support online consumer reviews, some of which mention GoodPop products being healthy or healthier than other similar products. (*Id.* at 42–45).

Fourth, JonnyPops pleads that GoodPop's packaging of its products is "misleading and deceptive because [it] displays images of fruit that are not the exclusive or even the primary ingredients of its products." (Am. Counterclaims, Dkt. 37, at 45). As an example, JonnyPops points to the packaging of GoodPop's Cherry n' Lemonade Pop, which is shown below. JonnyPops alleges this pop contains filtered water, white grape juice concentrate, and apple juice concentrate as the top three ingredients, as well as "some lemon juice" and "cherry . . . concentrate" as lesser-included ingredient. (*Id.* at 45–46).



JonnyPops also claims that GoodPop's Strawberry Shortcake Pop's "primary ingredients are ice cream, milk, cane sugar and milkfat," in addition to strawberries. (*Id.* at 46). JonnyPops asserts that "[c]onsumers believe that GoodPop's products are made exclusively or primarily from the fruit depicted on their packaging, and purchase these products for that reason." (*Id.*) JonnyPops uses online consumer reviews to support its assertion that consumers believe GoodPops are made exclusively or primarily from the fruit shown on their packaging, including one review that states, "I love the mixture of the sweet tangy flavors from the lemon and cherry juice." (*Id.*). JonnyPops points out that, though cherries and lemons are shown on the packaging of the Cherry n' Lemonade Pop, it "contains no whole cherries or cherry juice." (*Id.*). Another reviewer of that same product purportedly stated, "You can taste the lemon and cherry in them." (*Id.*).

Fifth, JonnyPops similarly pleads that GoodPop's product names are deceptive regarding the product's ingredients. It again points to the Cherry n' Lemonade Pop, which it pleads is mainly made of water, white grape juice concentrate, and apple juice concentrate, rather than cherry-based or lemon-based ingredients.

Finally, JonnyPops asserts that GoodPop's use of the "USDA Organic" symbol on its packaging misleads consumers into believing its products are healthy. JonnyPops points to a consumer review of GoodPop's Orange n' Cream Pop, which contains eight grams of added sugar; the consumer stated that they feel "particularly good about [this popsicle] because it is made of organic ingredients, no refined sugar or high fructose corn syrup, and no artificial dyes." (*Id.*). Another consumer reported that they "love the fact that these pops are organic, dairy free and isn't loaded with sugars and calories. Taste like the normal thing but way healthier." (*Id.*). JonnyPops claims that these reviews demonstrate that the "USDA Organic" symbol is misleading and material to consumers. (*Id.* at 49).

JonnyPops asserts that alleged conduct described above has injured JonnyPops's profits and goodwill. (*Id.* at 50). It also alleges that GoodPop engaged in this conduct knowingly, willfully, and in bad faith, justifying enhanced damages and the award of attorneys' fees. GoodPop now moves to dismiss each of JonnyPops's counterclaims.

## II. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

#### A. Lanham Act False Advertising Claim

To sufficiently allege a claim for false advertising under the Lanham Act, JonnyPops must allege facts making it plausible that (1) GoodPop made a false or misleading statement of fact about a product; (2) such statement either deceived, or had the capacity to deceive a substantial segment of potential consumers; (3) the deception is material, in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; and (5) JonnyPops has been or is

likely to be injured as a result of the statement at issue. See *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000).

The Court notes from the outset that it disagrees with JonnyPops's premise that, if the Court or jury agree with GoodPop that JonnyPops has engaged in misleading or deceptive practices, then GoodPop's marketing and advertising of its own products must also constitute misleading or deceptive practices. (Am. Counterclaims, Dkt. 37, at 50). Determining whether an advertising practice is false or misleading requires a fact-based, context-specific analysis. *See id.* at 495 n.5 ("When construing the allegedly false or misleading statement to determine if it is actionable [under the Lanham Act], the statement must be viewed in the light of the overall context in which it appears."). The Court therefore disregards JonnyPops's argument that, if JonnyPops is found liable for false advertising or unfair competition, GoodPop is automatically similarly liable. The Court will analyze in turn each of GoodPop's alleged false or misleading statements and determine whether JonnyPops has sufficiently stated a false advertising claim based on those statements.

### 1. JonnyPops's "Refined Sugar" Allegation

JonnyPops alleges that GoodPop has made false or misleading statements on its website and packaging declaring that GoodPops never contain refined sugars. (Am. Counterclaims, Dkt. 37, at 33, 35–38). JonnyPops argues that, to the contrary, many GoodPop products—such as the Disney Mickey Mouse Fudge n' Vanilla Pop, the Neapolitan Pop, the Orange n' Cream Pop, and the Strawberry Lemonade Pop—"contain cane sugar, which is always refined to some extent." (*Id.* at 33–34). Based on four consumer reviews, JonnyPops pleads that a significant segment of consumers are and would be misled by GoodPop's claim that their products will never contain refined sugar and would purchase GoodPops based on that claim. (*Id.* at 38–39).

GoodPop argues in its motion to dismiss that JonnyPops has failed to plead two of the elements for a false advertising claim based on GoodPop's statement that its products do not

contain refined sugars. First, GoodPop claims that JonnyPops never alleges that a substantial segment of GoodPop's customers understand "refined sugars" to include cane sugar, such that a substantial segment of consumers is confused or misled by GoodPop's statement that its products "never have . . . refined sugars." (Mot. to Dismiss Counterclaims, Dkt. 44, at 5–6). GoodPop also asserts that JonnyPops has failed to identify any facts showing that its refined sugar statement is material. (*Id.* at 6). JonnyPops responds that because GoodPop's statement—that its products "never have . . . refined sugars" is "literally false," JonnyPops does not need to prove consumer deception. (Counter-Pl.'s Resp., Dkt. 59, at 14). JonnyPops also points to consumer reviews supporting that consumers purchase GoodPop products because they believe GoodPop products contain no refined sugar.

At this early stage in the litigation, the Court must accept as true JonnyPops's allegation that cane sugar is a refined sugar.[3] *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. The Court therefore agrees with JonnyPops that it has plausibly alleged GoodPop's statement that its products "never have . . . refined sugars" is literally false.[4] Accordingly, JonnyPops does not need to prove materiality by introducing evidence that consumers relied on this statement in deciding to purchase GoodPop products or introduce "evidence of actual deception." *See Pizza Hut, Inc.*, 227 F.3d at 497

---

[3] GoodPop asserts in its Reply that the "foundational premise" behind JonnyPops's allegation—that the cane sugar used in certain GoodPop products must be refined because the FDA prohibits the sale of unrefined sugar for human consumption—is wrong, making JonnyPops's allegation not plausible. (Counter-Def.'s Reply, Dkt. 61, at 3–4). GoodPop cites as support an FDA regulation, 21 C.F.R. § 172.810(b). (*Id.* at 4). But JonnyPops has also cited FDA regulations and other definitions in support of its allegations, and the Court must accept JonnyPops's pleadings as true over competing arguments by the movant. *See In re Katrina Canal Breaches Litig.*, 495 F.3d at 205.

[4] JonnyPops argues in the alternative that it has plausibly alleged materiality by citing to consumer reviews. (Counter-Pl.'s Resp., Dkt. 59, at 15). JonnyPops claims that these reviews support its argument that consumers purchase GoodPop's products because the consumers believe the products contain no refined sugar and buy the products on that basis. (*Id.*). Three of these alleged online reviews specifically refer to GoodPop's products not containing refined sugar, which make it plausible that GoodPop's alleged deception is material. *See Austin's Nat. Frozen Pops, Inc. v. Jonny Pops, LLC*, No. 1:24-CV-716-RP, 2025 WL 888560, at *4 (W.D. Tex. Mar. 13, 2025) (explaining that "GoodPop's allegations of consumer reviews make it plausible that JonnyPop's alleged deception is material"). The Court would therefore find in the alternative that JonnyPops has plausibly alleged the materiality element of its false advertising claim.

(citations omitted) ("With respect to materiality, when the statements of fact at issue are shown to be literally false, the plaintiff need not introduce evidence on the issue of the impact the statements had on consumers. In such a circumstance, the court will assume that the statements actually misled consumers."). Thus, JonnyPops has plausibly alleged a false advertising claim for GoodPop's statement that its products "never have . . . refined sugar." The Court will deny the motion to dismiss this claim.

### 2. JonnyPops's "Whole Fruit, Juices and Purees" Allegation

Second, JonnyPops pleads that GoodPop's website states, "The fruit in GoodPops is real and really good! We use real, whole fruits, juices and purees." (*Id.* at 39). JonnyPops points to the Disney Mickey Mouse Fudge n' Vanilla Pop, the Fudge n' Vanilla Crunch Pop, the Fudge n' Caramel Crunch Pop, and the Chocolate Vanilla Sandwiches, and claims that these products "do not contain any whole fruits, juices, or purees," making this statement on GoodPop's website false or misleading. (*Id.* at 39–40). JonnyPops also claims that GoodPop's Cherry n' Lemonade Pop and Star Wars Green Apple Lightsaber Pops "consist largely of fruit-juice concentrates and other additives, rather than whole fruit, juices, or purees." (*Id.* at 40). Based on online consumer reviews that highlight the use of "real," "100%" fruit juice in GoodPop products, JonnyPops alleges that consumers are deceived by this statement, causing them to purchase GoodPops. (*Id.* at 40–41).

GoodPop argues in its motion to dismiss that there is nothing supporting JonnyPops's argument that a substantial segment of consumers would interpret the statement at issue to mean that every GoodPop product contains fruit. (Mot. to Dismiss Counterclaims, Dkt. 44, at 7). Additionally, GoodPop contends that JonnyPops "does not (and cannot) allege that the use of real fruit juice concentrate is inconsistent with using 'real . . . juices, and purees.'" (*Id.* at 7). Finally, GoodPop argues that JonnyPops does not sufficiently plead materiality. (*Id.*). JonnyPops responds that (1) GoodPop did not limit its statement to when its products contain fruit; (2) GoodPop's

"whole fruits, juices and purees" statement is literally false; and (3) JonnyPops has alleged sufficient facts to demonstrate the deceptive and material nature of this statement. (Counter-Pl.'s Resp., Dkt. 59, at 15–17).

First, the Court holds that JonnyPops has failed to allege any facts supporting that consumers mistakenly believe GoodPop's non-fruit products (e.g., a Disney Mickey Mouse Fudge n' Vanilla Pop), contain any fruit component. None of the consumer reviews referenced by JonnyPops support such a conclusion, and JonnyPops does not plead any other facts to make this is a reasonable inference. *See Ashcroft*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its . . . common sense.").

Second, accepting as true JonnyPops's allegation that fruit juice concentrate is not a type of whole fruit, juice, or puree, (Am. Counterclaim, Dkt. 37, at 40), the Court finds that JonnyPops has sufficiently pleaded that GoodPop's statement that it uses "whole fruits, juices and purees" is literally false.[5] As in Section III(A)(1), *supra*, JonnyPops therefore does not need to prove materiality or introduce evidence of actual deception.[6] *See Pizza Hut, Inc.*, 227 F.3d at 497 (citations omitted). The Court will therefore grant the motion to dismiss JonnyPops's claim based on GoodPop's statement that it uses "whole fruits, juice and purees" as it relates to GoodPop products that contain

---

[5] The Court disagrees with GoodPop that JonnyPops did not plead that fruit juice concentrate is not a whole fruit, juice, or puree. JonnyPops pleaded that some GoodPop products "consist largely of fruit-juice concentrates and other additives, rather than whole fruits, juices, or purees." (Am. Counterclaims, Dkt. 37, at 40). Viewing this pleading in the light most favorable to JonnyPops, as the Court must, JonnyPops did allege that juice concentrates are not a type of whole fruit, juice, or puree. Moreover, the Court disregards GoodPop's citation to a website defining "from concentrate" juices, (Mot. to Dismiss Counterclaims, Dkt. 44, at 7 n.2), as this source is from outside of the pleadings and cannot be reviewed by the Court at this stage. *See Dorsey*, 540 F.3d at 338

[6] Even if JonnyPops did need to plead such evidence, it has done so by citing several consumer reviews that positively reference GoodPop's Cherry n' Lemonade Pop being made with "100% real juice"; taking JonnyPops's pleading as true, it is not true that this product is made with 100% real fruit juice.

no fruit ingredients but will deny the motion to dismiss as it relates to GoodPop products that use fruit juice concentrate.

### 3. JonnyPops's "Healthy for Children" Allegation

Third, JonnyPops pleads that GoodPop engaged in false advertising by "us[ing] images of children to advertise its most sugary products." (Am. Counterclaims, Dkt. 37, at 41). According to JonnyPops, "[e]vidence confirms that GoodPop's deceptive marketing has been effective. Consumers believe that GoodPop's high-sugar products are healthy for children, and buy them for that reason." (*Id.* at 42).

This claim patently fails. None of the online reviews or comments cited by JonnyPops in support of its argument that "[c]onsumers believe that GoodPop's high-sugar products are healthy for children" are tied in any way to images of children in its advertising. In other words, JonnyPops alleges no facts to support that consumers' purported confusion regarding GoodPop's sugar content has been caused or influenced by photos of children holding a GoodPop. *See Ashcroft*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Thus, the Court will grant the motion to dismiss JonnyPops's false advertising claim based on GoodPop's images of children holding its products.

### 4. JonnyPops's Images of Fruit Allegation

Fourth, JonnyPops alleges that GoodPop's packaging of its products misleads consumers by depicting fruits that "are not the exclusive or even the primary ingredients of its products." (Am. Counterclaims, Dkt. 37, at 45). It points to GoodPop's Cherry n' Lemonade Pop (which purportedly is primarily made of filtered water, white grape juice concentrate, and apple juice concentrate, with only a small amount of lemon juice and cherry concentrate) and Strawberry Shortcake Pop (which is purportedly made of ice cream, milk, cane sugar and milkfat, with only a small amount of strawberry). (*Id.* at 45–46). JonnyPops claims that "[c]onsumers believe that GoodPop's products are

made exclusively or primarily from the fruit depicted on their packaging, and purchase these products for that reason." (*Id.*) JonnyPops quotes as support alleged consumer reviews, including one that states, "I love the mixture of the sweet tangy flavors from the lemon and cherry juice," and JonnyPops points out that the Cherry n' Lemonade Pop "contains no whole cherries or cherry juice." (*Id.*). Another review of that product purportedly stated, "You can taste the lemon and cherry in them." (*Id.*). GoodPop argues that JonnyPops has failed to allege the first two elements of its false advertising claim (i.e., a false or misleading statement that deceived or could deceive a substantial segment of potential consumers).

The Court finds that JonnyPops has sufficiently stated a claim based on GoodPop's packaging. At this stage of the litigation, the Court must accept as true JonnyPops's factually-supported allegation that consumers believe GoodPop products only or primarily contain the fruit(s) depicted on the packaging, thus making the packaging misleading for products where the fruits in question are not the only or primary ingredient.[7] For instance, JonnyPops pleads that one consumer—for a product that JonnyPops pleads has the top-three ingredients of filtered water, white grape juice concentrate, and apple juice concentrate—wrote that they love "the mixture of the sweet tangy flavors from the lemon and cherry juice." (Am. Counterclaims, Dkt. 47, at 46). Another customer purportedly stated that they can "taste the lemon and cherry" in these popsicles. (*Id.*). Based on these reviews, the Court finds it plausible that a substantial segment of customers is misled by GoodPop's packaging, as these consumers appear to not understand that this particular popsicle contains more grape and apple ingredients than cherry or lemon ingredients.[8] *See Turner*, 663 F.3d at

---

[7] The Court notes, however, that JonnyPops's argument that GoodPop's packaging displays images of whole fruit but does not contain whole fruit is borderline frivolous. As GoodPop argues in its Reply, "no customer who sees whole cherries or oranges on a package expects to find stems and peel in the product." (Counter-Def.'s Reply, Dkt. 61, at 10).

[8] GoodPop argues that JonnyPops does not identify a single example of any GoodPop product packaging depicting a fruit that is "*not* a critical ingredient in its products," meaning JonnyPops has not plausibly alleged a false statement. (Mot. to Dismiss Counterclaims, Dkt. 44, at 9) (emphasis in original). At the motion-to-

775 (5th Cir. 2011) (quoting *Harrington.*, 563 F.3d at 147) (holding that a "motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted'").

GoodPop contends that JonnyPops does not identify a single example of any GoodPop product packaging depicting a fruit that is "not a critical ingredient in its products," meaning JonnyPops has not plausibly alleged a false statement. (Mot. to Dismiss Counterclaims, Dkt. 44, at 9) (emphasis in original). At the motion-to-dismiss stage, however, the Court must accept JonnyPops's pleading that consumers expect a GoodPop to primarily or only contain the ingredients shown on the packaging. Whether consumers instead understand the packaging to show "critical ingredient[s]" is a fact issue to be resolved after discovery. The Court will therefore deny the motion to dismiss based on this claim.

### 5. JonnyPops's Product Names Allegation

Similarly, JonnyPops pleads that GoodPop's product names materially mislead a substantial segment of consumers regarding a product's ingredients. For the same reasons stated above for JonnyPops's "Images of Fruit" allegation in Section III(A)(4), *supra*, the Court will deny the motion to dismiss JonnyPops's claim based on GoodPop's product names. It is plausible, for example, that consumers are misled by a product being called Cherry n' Lemonade Pop, when the product contains more grape-based and apple-based ingredients than cherry-based or lemon-based ingredients. JonnyPops has sufficiently pleaded consumers reviews from which the Court can plausibly infer that a substantial segment of consumers does not understand that some GoodPop products contain more ingredients from fruits other than those in the product's name. Whether it is in fact misleading to consumers that a fruit ingredient included in a product's name is not the only

---

dismiss stage, however, the Court must accept JonnyPops's pleading that consumers expect a GoodPop to primarily or only contain the ingredients shown on the packaging. Whether consumers instead understand the packaging to show "critical ingredient[s]" is a fact issue to be resolved after discovery.

or primary fruit in the product, though the product does contain that fruit ingredient in some

quantity, is an issue properly resolved at a later stage.

### 6. JonnyPops's "USDA Organic" Allegation

Finally, JonnyPops pleads that GoodPop's use of the "USDA Organic" symbol on its

packaging is misleading because it, taken together with other allegedly false statements, augments the

allegedly false impression given to consumers that GoodPop's products are healthy, low in sugar,

and "better for you." (Am. Counterclaims, Dkt. 37, at 48). JonnyPops cites as support multiple

online reviews from consumers who state they like the product because it is organic. (*Id.*). One such

consumer wrote that they feel "particularly good about [this popsicle] because it is made of organic

ingredients, no refined sugar or high fructose corn syrup, and no artificial dyes." (*Id.*). Another

consumer wrote that they "love the fact that these pops are organic, dairy free and isn't loaded with

sugars and calories. Taste like the normal thing but way healthier." (*Id.*). JonnyPops claims that these

reviews demonstrate that the "USDA Organic" symbol is material to consumers and misleads them

into thinking GoodPop products are healthier than other similar products. (*Id.* at 49). GoodPop

argues in its motion to dismiss that JonnyPops neither pleads that GoodPop products are not

organic nor pleads facts showing that consumers are misled by the "USDA Organic" symbol. (Mot.

to Dismiss Counterclaims, Dkt. 44, at 11–12).

The Court agrees with GoodPop that JonnyPops has not sufficiently pleaded that

GoodPop's use of the "USDA Organic" symbol is false or misleading. JonnyPops never alleges that

GoodPops do not in fact qualify as "USDA Organic"—i.e., it does not allege that GoodPop is

falsely labeling its products as organic. JonnyPops also fails to sufficiently plead that GoodPop's use

of the "USDA Organic" symbol is misleading. JonnyPops does not provide the Court with any facts

supporting that GoodPops being labelled organic makes consumers think anything other than what

the label says—that they are organic. For instance, this Court has previously found that the phrase

"free from PFOAs" was not misleading because it "has only one reasonable meaning: that the product is free from PFOAs. There are no technical, competing interpretations of that term." *Elseroad v. Bos. Foundry, Inc.*, No. 1:23-CV-1449-RP, 2024 WL 3404805, at *5 (W.D. Tex. July 10, 2024). The same reasoning applies here.

Moreover, consumers calling GoodPops organic, as well as listing other attributes of GoodPops that they prefer (i.e., that they contain no high fructose corn syrup), is not sufficient for the Court to plausibly infer that a substantial segment of consumers could be misled into believing that GoodPops are healthy *because* they are organic, as opposed to believing they are healthy for other reasons. If JonnyPops's argument is that a product can be both organic and unhealthy, which is misleading to consumers, then that is an issue inherent with the USDA's definition of organic— not an issue with GoodPop's particular use of the "USDA Organic" label. "Although one could argue organic labeling is inherently misleading, [JonnyPops] do[es] not show [GoodPop's] use of the term is any different from other organic food providers." *See Gedalia v. Whole Foods Mkt. Servs., Inc.*, 53 F. Supp. 3d 943, 958 (S.D. Tex. 2014). The Court will therefore grant GoodPop's motion to dismiss JonnyPops's claim based on GoodPop's use of the "USDA Organic" symbol.

### B.  False Advertising and Unfair Competition Claims Under California Law

JonnyPops also brings claims for false advertising under California Business & Professions Code § 17500 and unfair competition under the California Business & Professions Code § 17200. (Am. Counterclaims, Dkt. 37, at 51–53). Claims for unfair competition and false advertising brought under California law "are substantially congruent to claims made under the Lanham Act." *Kurin, Inc. v. Magnolia Med. Techs., Inc.*, 473 F. Supp. 3d 1117, 1128 (S.D. Cal. 2020) (citing *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994)). Out-of-state plaintiffs can avail themselves of California's unfair competition law and false advertising law if they sufficiently plead that they were harmed by wrongful conduct occurring in California or that the false or misleading statements at issue were

made in California. *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 467 F. Supp. 2d 1071, 1089 (S.D. Cal. 2006) (citing *Norwest Mortgage, Inc. v. Superior Court*, 85 Cal. Rptr. 2d 18 (Cal. Ct. App. 1999)) (holding that non-resident plaintiffs cannot bring unfair competition or false advertising claims under California law "for conduct occurring entirely outside of California").

JonnyPops does not plead any "factual content that allows the court to draw the reasonable inference that" GoodPop engaged in wrongful conduct in California or made false or misleading statements. *See Ashcroft*, 556 U.S. at 678. The sole allegation related to California in JonnyPops's Amended Counterclaims is that "GoodPop's wrongful conduct is ongoing and part of a general practice that is being perpetuated and repeated throughout California and nationwide." (Am. Counterclaims, Dkt. 37, at 52). Such a vague, conclusory allegation is not sufficient to allow JonnyPops to proceed under California law. The Court will therefore dismiss JonnyPops's claims brought under the California Business & Professions Code.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that GoodPop's Motion to Dismiss Defendant/Counter-Plaintiff JonnyPops's Amended Counterclaims, (Mot. to Dismiss Counterclaims, Dkt. 44), is **GRANTED IN PART AND DENIED IN PART**, such that:

- JonnyPops's false advertising claims under the Lanham Act based on (1) GoodPop's statements that its product never contain refined sugar; (2) GoodPop's statement that it uses "whole fruits, juices and purees" despite using fruit juice concentrate; (3) GoodPop's packaging depicting fruits that are not the exclusive or primary ingredients; and (4) GoodPop's product names including fruits that are not the exclusive or primary ingredients survive the motion to dismiss;

- JonnyPops's false advertising claims under the Lanham Act based on (1) GoodPop's use of photos of children; (2) GoodPop's statement that it uses "whole fruit, juices and purees" despite having some products with no fruit ingredient; and (3) GoodPop's use of the "USDA Organic" symbol are dismissed; and

16

- JonnyPops's claims under the California Business and Professions Code are dismissed.

**SIGNED** on November 10, 2025.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE